## BUCKEYE ENGINE CO. v. CITY OF CHEROKEE.

No. 5800.    Opinion Filed November 23, 1915.

Rehearing Denied January 11, 1916.

(153 Pac. 1166.)

1. **TRIAL—Motion to Direct Verdict—Evidence Considered.** A motion to direct a verdict admits all the facts and inferences to be drawn therefrom in favor of the party against whom the motion is directed, and leaves for consideration only such evidence as is favorable to the party against whom such motion is directed.

2. **MUNICIPAL CORPORATIONS — Action to Recover Statutory Penalty—Burden of Proof.** In an action for a statutory penalty, the burden is on the plaintiff to prove all facts necessary to bring the case under the provisions of the statute.

3. **SAME**—In an action for the penalty imposed by section 6777, Rev. Laws 1910, against one not an officer of the municipality, the burden is on the plaintiff to show that the party receiving the money had notice that the contract under which it was paid was unlawful, fraudulent, or void.

4. **SAME—Right of Action.** In an action by a creditor of a municipal corporation, the burden is on him to show that all provisions of the law were complied with before his contract was entered into, and it is not material that he had no notice of the failure to comply with the statutes, but an action for a penalty under section 6777, Rev. Laws 1910, cannot be sustained, unless the defendant had notice of the vice in the contract under which the money is paid.

(Syllabus by Devereux, C.)

*Error from District Court, Alfalfa County;*
*James W. Steen, Judge.*

Action by the City of Cherokee, Oklahoma, against the Buckeye Engine Company, a corporation. Judgment

for plaintiff, and defendant brings error. Reversed and remanded for new trial.

This was an action brought under the provisions of Rev. Laws 1910, sec. 6777, by the defendant in error to recover double the amount of two certain warrants aggregating $3,250, issued to the plaintiff in error and paid to it by the defendant in error. It appears from the evidence that on September 24, 1908, the engine company entered into a contract with the city, by which it agreed to sell said city certain engines for the price of $8,500. These engines were delivered to the city, but were never accepted by it, as the tests required by the contract were never made. The evidence is conflicting as to why the tests were not made, the engine company introducing evidence to show that it wanted a test, and especially a letter from the mayor of the city, dated October 28, 1909, stating that it was impossible for the city to make the test at that time, because it was out of coal. This letter also stated that on account of the installation of an electric light plant, it would be necessary to exchange the small engine for a larger one, and also to install another producer, and asked the engine company to send a representative to Cherokee authorized to make a contract for the exchange, and to test the producer and the engines after the larger one was installed. After this letter was written, the record shows another paper, by which the engine company agreed to furnish other engines for the price of $12,050, and this paper contains the provision that upon the acceptance by both parties of this new contract, the engine company would take back one of the engines embraced in the contract of September 24, 1908, and allow a credit of $2,370 for the same on the new

contract, and this paper also contains the provision that the city should pay $3,250 on the contract of September 24, 1908. The contention of the plaintiff is that this proposed contract was never made in good faith by the engine company, its only object being to obtain the $3,250 on the contract of September 24, 1908, which it alleges was void because the city had no authority or power to make it, under the constitutional and statutory provisions of our laws. There is a conflict between the parties as to whether the contract of 1909 was ever executed, but nothing was ever done under it, unless the payment of the $3,250 was induced thereby, as contended by the defendant in error, and there was evidence on behalf of the plaintiff in error that it never received any acceptance of the contract of 1909, and never received any notice or had any knowledge that the contract of 1909 was ever accepted by the defendant in error. There was also evidence in the record that there was an election called on January 4, 1908, to vote a bond issue of $25,000 for waterworks, which election was held on January 21, 1908, and was canvassed by the city authorities on January 22, 1908, and also on June 15, 1908, an election was called to vote $40,000 in bonds, for a sewerage system, which election was held on July 7, 1908, and on July 9th the proposition to issue the bonds was declared carried, and the following appears from the records of the city:

"Motion by Wiles, seconded by Sells, that the clerk and mayor be authorized to enter into a contract for the sale of the three bond issues as follows: To John Nunvene & Co., through their agent, M. J. King, waterworks bonds issued in the sum of $25,000, 6 per cent., 25 years; sewerage bond issue voted $40,000, 6 per cent., 25 years; refunding bond issue, as ordered by the court when settled technically. Motion unanimously carried."

No bonds were sold at this time, and as most of the city records were destroyed by fire, no reason appears of record why they were not, but it seems to be admitted that the bonds could not be sold because the notice for the election was not sufficient. After the contract of September 24, 1908, another election was held, and bonds were issued and sold. It also appears that prior to the contract of September 24, 1908, proposal for sealed bids was made by the city, to be opened at 1 o'clock p. m. August 29, 1908, for the furnishing of the whole or any part of the material and performance of labor in the construction of combined storm and sanitary sewer system and waterworks system. On these facts the trial court directed a verdict in favor of the plaintiff for $6,500, and the defendants bring the cause to this court by petition in error and case-made.

*Walter L. Owen* and *Houston & Brooks,* for plaintiff in error.

*A. R. Carpenter* and *Parker & Simons,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above.) This action is brought under the provisions of Rev. Laws 1910, sec. 6777, which reads as follows:

"Every officer of any county, township, city, town [village] or school district, who shall order or direct the payment of any money or transfer of any property belonging to such county, township, city, town [village] or school district in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for any such county, township, city, town [village] or school district by any

officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid, or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the county, township, city, town [village] or school district affected, for double the amount of all such sums of money so paid, and double the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of such county, township, city, town [village] or school district, or of any resident taxpayer thereof, as hereinafter provided."

This statute was considered by this court in *Territory ex rel. v. Woolsey*, 35 Okla. 545, 130 Pac. 934, where it is decided that this is a penal statute, and like all penal statutes must be strictly construed, and the burden is on the plaintiff to prove all the facts to bring the transaction under the condemnation of the statute.

In *People v. Dunston*, 84 N. Y. Supp. 257, an action was brought to recover a penalty imposed by statute for having quail in possession during the closed season, and the evidence showed that the witness entered the defendant's restaurant, and ordered quail to be served him, when the waiter said that he would have to see, and went into the rear of the restaurant and spoke to some one, and then served the quail, but it was held that the evidence was not sufficient to show possession in the defendant, and the action was properly dismissed.

The statute makes it necessary that any person, other than the officers of a municipal corporation, shall have notice that the payment for which the penalty is

imposed was made on a fraudulent, unauthorized, or unlawful contract, and assuming, but not deciding, that there was evidence that the engine company had notice that this payment was made on a void, fraudulent, or unlawful contract, there certainly was not such evidence as would authorize the court to take this question from the jury.

As to whether the election for the first two issues of bonds was void, this seems, from the record and briefs, to depend on the question as to whether the necessary notice of the election was given, and if this is the only point, it has been held by this court that such want of notice does not render the bonds void. See *City of Ardmore v. State ex rel.*, 24 Okla. 862, 104 Pac. 913, where it is held:

"In ordering an election in a city of the first class, on a question of whether certain public utility bonds shall be issued, ten days' notice of such election, by publication of the mayor's proclamation calling the election in a newspaper of general circulation in such city at least ten days prior to the date of the election, is required; but, if the notice be published for a less time than ten days prior to the election, a court of equity will not, for this reason alone, declare the election void, where it is not shown or alleged that any one failed to vote because of the failure to publish the proclamation for the full statutory period, and where it is conceded that the general voting public had notice of the election and participated therein."

If it is contended that the contract of September 24, 1908, was unlawful because the bonds were not sold, and the cash actually in the treasury, there is no evidence that the plaintiff in error had notice of this fact, assuming that it was material.

If the defendant in error relies on the allegation that the contract of November 17, 1909, was fraudulent, and that it was entered into for the fraudulent purpose of getting the payment of $3,250, and with no intent on the part of the plaintiff in error to fulfill it, there is a conflict in the evidence as to whether this contract was ever made, and evidence on the part of the plaintiff in error directly contradicting the fact. In this condition of the evidence it was error to direct a verdict. In *Reger v. Henry,* 48 Okla. 759, 150 Pac. 722, it is held:

"The effect of a demurrer to the evidence and a motion for a directed verdict is well established in this jurisdiction. * * * There is a sharp conflict in the evidence, and, this being true, on a motion to direct a verdict, all the facts and inferences in conflict with the evidence, against which the action is to be taken, must be eliminated entirely from consideration and totally disregarded, leaving for consideration the evidence which is favorable to the party against whom the motion is made."

And see *Gregory v. Harper,* 51 Okla. 419, 152 Pac. 70.

There is a clear distinction between the cases holding that, in a suit by a creditor of a municipal corporation, he cannot recover because of the illegality of his contract, and a suit for the penalty imposed by section 6777, *supra,* because, in the first class of cases, the creditor must see that his contract is legal, and the burden is on him to establish it, while, in an action for the penalty, he must have notice that the contract is fraudulent, unlawful, or void.

We therefore recommend that the judgment be reversed, and the case remanded for a new trial.

By the Court: It is so ordered.