## STEWART *et al.* v. LAFAYETTE.

No. 4874.   Opinion Filed December 21, 1915.

Rehearing Denied February 15, 1916.

(153 Pac. 847.)

1.   **TRIAL—Direction of Verdict—Evidence.** Where a petition alleges facts which are sufficient to constitute a cause of action, and at the trial there is evidence offered which reasonably tends to establish the truth of all such allegations, it is error to instruct a verdict for the defendant.

2.   **CONTRACTS—Building Contract—Breach—Extra Work—Direction of Verdict—Sufficiency of Evidence.** Evidence in this case examined, and **held** to be reasonably sufficient to establish the allegations of plaintiffs' petition.

(Syllabus by Wilson, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by B. F. Stewart and another, copartners as B. F. Stewart & Son, against Ben F. Lafayette.   Judgment for defendant, and plaintiffs bring error.   Reversed and remanded.

*W. W. Noffsinger* and *Y. P. Broome,* for plaintiffs in error.

in error.

*Thomas H. Owen* and *Joseph C. Stone,* for defendant

Opinion by WILSON, C.  Plaintiffs in error, as plaintiffs, sued the defendant in error, as defendant, in the superior court of Muskogee county, to recover damages for a breach of a building contract, and to recover compensation for extra work alleged to have been done by them on the building involved in the controversy.  At the trial of the case, and after all the evidence had been introduced, the court instructed a verdict for the defendant, and on such a verdict being returned, the court rendered judgment for the defendant and against the plaintiffs.  Upon plaintiffs' motion for a new trial being overruled and exceptions to the ruling of the court thereon properly reserved, they bring the case to this court by petition in error with case-made attached.

A number of assignments of error are presented by the petition in error, but all such that can properly be considered by this court hinge on the one proposition:  Did the court err in instructing a verdict for the defendant?  If at the close of the trial there was any evidence in the case which had not been rendered nugatory by evidence of a certain certificate of an architect to be hereinafter referred to, and which, if true, would entitle plaintiffs to recover something in the action, then the court erred in directing a verdict, and should have submitted the case to the jury under proper instructions.  If, however, admitting the truth of all the evidence in the case favorable to plaintiffs' contention, they would not be, as a matter of law, entitled to recover anything from the defendant by their action, then the court's action in directing a verdict was right, and the judgment appealed from should be affirmed.

Section V of the contract sued on is as follows:

"Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architects, the owner shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractors under this contract; and, if the architects shall certify that such refusal, neglect, or failure is sufficient grounds for such action, the owner shall also be at liberty to terminate the employment of the contractors for the said work, and to enter upon the premises and take possession, for the purpose of completing the work included under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractors they shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractors, but, if such expense shall exceed such unpaid balance the contractors shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificates thereof shall be conclusive upon the parties."

Acting on what he claimed to be his right under this section of the contract, and after giving a notice, which plaintiffs in their brief concede to be sufficient in form,

the defendant, on October 9, 1911, discharged the plaintiffs, took over the building, and completed the work thereon which the plaintiffs had been employed to do.

Attached to the defendant's amended answer in the case, and filed as a part thereof, was the following certificate of the architect employed to superintend the work on the building, to wit:

"MUSKOGEE, OKLAHOMA, Nov. 20, 1912.

"I have audited the account attached herein, and find two items of charges for chickens amounting to $5.95, and one item of drayage, 25c, and one item of account due La Fayette & Adams, of Okteha. I know nothing about these items, and do not allow them for this reason. I hereby certify that the other items, amounting to $6,400.13, are expenses of labor and material necessary to the work under contract.

"[Signed] C. W. DAWSON,

"For DAWSON, KEDIAN & VALEUR."

Attached to the above certificate and made a part thereof is a statement of an account between the plaintiffs and the defendant beginning July 8, 1911, and ending May 17, 1912, containing items of merchandise, mostly of a character used in the building of a house, payments for drayage, express charges, cash paid on pay roll, checks paid on sight drafts and bills of lading, and checks paid on contract. It should be observed here that section V of the contract, quoted above, provides that, if the owner discontinues the employment of the contractors by authority of that section, and takes possession of the building, and completes the work himself:

"The expense account incurred by the owner as herein provided, either for furnishing materials or finishing the

work, and any damage incurred through such default, shall be audited by the architects, whose certificate therefor shall be conclusive on the parties."

This last-quoted provision of the contract provided a method of determining the balance due one or the other of the parties upon the completion of the building under such conditions as arose in this case; but no such a certificate as the one required by the last-quoted provision of the contract was alleged in the pleadings or offered in evidence by either party to the action. The certificate of the achitect above referred to did not comply with this provision of the contract. It was a certificate of the correctness of the expense account of the entire contract, from beginning to end. There was no way to determine from the recitals of the certificate in question what the expense was of completing the work after the plaintiffs were dispossessed, and such certificate could not, therefore, be conclusive on the parties as to the matters in controversy in this action.

Counsel for the defendant tried the case on the theory: (1) That the architects' certificate quoted above was one made in compliance with one of the provisions of section V of the contract, and that it was conclusive on the plaintiffs as to the balance, if any, that was due them from the defendant on the completion of the building, and that said certificate conclusively showed that there was nothing due; (2) counsel for the defendant further contended that, the parties having stipulated that matters preliminary to the defendant's duty to pay should be determined and fixed by arbitration, and that plaintiffs having failed to arbitrate, or even to attempt to do so, cannot maintain their action. That arbitration, or a reasonable effort to arbitrate, was, under the contract, a condition precedent to an action against the defendant.

Sections III, VII, VIII, and XII of the contract read as follows:

"Sec. III. No alteration in the work shall be made in the work, except upon written order of the architects; the amount to be paid by the owner or allowed by the contractors by virtue of such alterations to be stated in said order. Should the owner and the contractors not agree as to the amount to be paid or allowed, the work shall go on under the order required above, and in case of failure to agree, the determination of said amount shall be referred to arbitration, as provided for in article XII of this contract."

"Sec. VII. Should the contractors be delayed in the prosecution or completion of the work by the act, neglect, or default of the owner, of the architects, or of any other contractor employed by the owner upon the work, or by any damage caused by fire or other casualty for which the contractors are not responsible, or by combined action of workmen in no wise caused by or resulting from default or collusion on part of the contractors, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the architects; but no such allowance shall be made unless a claim therefor is presented in writing to the architects within forty-eight hours of the occurrence of such delay.

"Sec. VIII. The owner agrees to provide all labor and materials essential to the conduct of this work not included in this contract in such manner as not to delay its progress, and in the event of failure so to do, thereby causing loss to the contractors, agrees that he will reimburse the contractors for such loss; and the contractors agree that, if they shall delay the progress of the work so as to cause loss for which the owner shall become liable, then they shall reimburse the owner for such loss. Should the owner and contractors fail to agree as to the amount of loss com-

prehended in this article, the determination of the amount
shall be referred to arbitration as provided in article XII
of this contract."

"Sec. XII.  In case the owner and contractors fail to
agree in relation to matters of payment, allowance, or loss
referred to in article III or VIII of this contract, or should
either of them dissent from the decision of the architects
referred to in article VIII of this contract, which dissent
shall have been filed in writing within ten days from the
announcement of such decision, then the matter shall be
referred to a board of arbitration to consist of one person
selected by the owner, and one person selected by the con-
tractors, these to select a third.  The decision of any two
of the board shall be final and binding on both parties
hereto.  Each party shall pay one-half of the expense of
such reference."

These four sections are the only parts of the contract
making any reference to arbitration, and are the sections
relied on by defendant's counsel in their brief to support
their contention that arbitration was a condition precedent
to an action against defendant.

Article III provides for arbitrating differences con-
cerning allowances to be made either party growing out or
alterations in the work where the parties themselves can-
not agree.  Article VII provides for arbitrating differences
between the parties as to what extension of time should
be granted to the contractors because of delays in the work
attributable to any of the causes enumerated in that sec-
tion.  Article VIII provides for arbitrating differences be-
tween the parties concerning any loss which either party
might sustain by reason of any delay attributable to the
party against whom the loss is sought to be charged.  Ar-
ticle XII provides the arbitration procedure, etc.  Nowhere
do we find a provision in the contract providing for the

arbitration of differences between the parties growing out of disputes as to the balance due to either party on final settlement between them, not involving any of the matters above referred to, and consequently arbitration in this case was not made by the contract a condition precedent to an action against the defendant.

We have already observed that there has not been pleaded in this case, or offered in evidence by either party, a certificate of the architect such as is provided for by section V of the contract, determining the cost to the defendant of completing the work on the building after it had been taken over by him for that purpose, and for that reason the defendant's contention that the certificate which was offered in evidence concludes the plaintiffs on the question of the balance due must fail.

There being no certificate of the architect pleaded or offered in evidence in the case such as is provided for by the terms of the contract, and both parties having gone to trial without the same, and the plaintiffs having pleaded in their reply that the certificate set out in the defendant's answer did not conform to the requirements of the contract, the question of what balance, if any, was due should have been determined by the ordinary rules of evidence.

Having disposed of the defendant's two principal contentions, we now come to the consideration of the question whether there was any evidence in the case favorable to the plaintiffs' contention which, if true, would entitle them to recover any sum whatever from the defendant. Without reviewing the evidence in this opinion, we must answer that we think there was such evidence in the case, and we feel that that view must have been entertained by the trial judge; for at the close of plaintiffs' case he promptly overruled defendant's demurrer to their evidence.

Taking this view of the case, we are of the opinion that the trial court committed error in directing a verdict for the defendant, and we therefore recommend that the judgment be reversed, and that the case be remanded to the superior court of Muskogee county for a new trial.

By the Court: It is so ordered.