## FIRST STATE BANK OF INDIAHOMA v. MENASCO *et al.*

No. 5521. Opinion Filed February 1, 1916.

Rehearing Denied February 29, 1916.

(155 Pac. 261.)

1. **BANKS AND BANKING—Sale of Bank Stock—Contract By Seller—Construction and Operation.** An agreement executed by M. to become a special indorser on all the notes held by a bank, to the extent of 55 per cent. thereof, upon conditions contained in such agreement to be performed by the bank, made by M. in consideration of the sale by him of 55 per cent. of the capital stock of the bank, and to secure the performance of which agreement M. makes a special deposit of money in said bank, of which agreement the bank had full knowledge at the time it accepted the special deposit and upon which it acted thereafter from time to time, does not constitute a contract between M. and the purchaser of the stock, but a contract between M. and the bank.

2. **SET-OFF AND COUNTERCLAIM—Agreement to Indorse Notes —Noncompliance With Conditions.** Where the bank fails to comply with the conditions imposed upon it by such agreement, any part of such special deposit which has not been properly applied by the bank in accordance with the terms of such indorsement agreement is the property of M. and may be set off by M. in an action against him by the bank upon a promissory note.

3. **APPEAL AND ERROR**—Verdict—Evidence—Where the record discloses evidence which would warrant the jury in returning the verdict which was returned, this court will not review the evidence nor disturb such verdict.

4. **BILLS AND NOTES** — Evidence—Parol Evidence — Written Agreement—Actions. Objections to the rulings of the court upon the introduction of evidence and the giving and refusing of instructions, examined, and such rulings **held** to be free from prejudicial error.

(Syllabus by Rummons, C.)

*Error from County Court, Comanche County;*
*H. N. Whalin, Judge.*

Action by the First State Bank of Indiahoma, a corporation, against E. E. Menasco and another. Judgment for defendants, and plaintiff brings error. Affirmed.

Plaintiff in error, hereinafter styled the plaintiff, commenced this action in the county court of Comanche county against the defendants in error, hereinafter styled the defendants, on March 19, 1912, seeking to recover upon a promissory note executed by the defendants in the sum of $972.55, with interest, attorney's fees, and costs. The defendant E. E. Menasco answered the petition of plaintiff, admitting the execution of the note sued on and pleading payment thereof, and filed therewith a cross-petition claiming a set-off against the plaintiff in the sum of $1,184.55, and prayed judgment against the plaintiff in the sum of $332. The defendant Ollie B. Menasco filed an answer alleging that she was merely a surety upon the note sued on, and adopting the answer of the defendant E. E. Menasco. The plaintiff replied to the answers of the defendants, and the cause was tried to a jury, resulting in a verdict against the plaintiff in the sum of $332. Motion for new trial was filed in due time, which, being overruled, plaintiff excepted, and judgment

being entered against it for the sum of $332, it brings error to reverse the same.

The cross-petition of the defendant E. E. Menasco alleges: That prior to the execution of the note sued on he was the owner of 55 shares, same being 55 per cent., of the capital stock of plaintiff. That he sold said 55 shares of stock to one J. E. Moore, and that as a part of the transaction resulting in the sale of said stock he executed a special indorsement contract, which is as follows:

"Special Indorsement Contract by E. E. Menasco for 55 per cent. of Paper or Notes and Overdrafts now in the First State Bank of Indiahoma, Okla.

"It is especially agreed and understood that I herewith become indorser on all notes now held by said bank, and agree to pay 55 per cent. of any and all losses that may be sustained in the event that said notes are uncollectible as follows:

"First, The First State Bank shall use every effort to collect said paper, and shall exhaust all security securing said notes and apply same in paying expenses of said collection, and the balance to be paid on the note, then any amount remaining unpaid I agree to pay 55 per cent. of same, and shall become the owner of said per cent. in such note or overdraft.

"It is further agreed that the bank shall give due notice of any such action to the said E. E. Menasco, on commencement of such proceedings, mailing such notice at Indiahoma, Okla.

"It it further agreed that action as above stated shall be taken within 30 days after such notes are due and unpaid; failure to take such action by bank relieves said E. E. Menasco of all further liability in the matter.

"J. E. MOORE.    E. E. MENASCO.

"Witness, C. A. CHAMBERS.    I. V. PRUITT.

"This special indorsement cancels all former contracts except list hereto attached.

"April 5, 1911.                    · E. E. MENASCO "

That some time after the execution of this "Special Indorsement Contract" and the sale of his stock to J. E. Moore, he, at the request of said J. E. Moore and C. A. Chambers, then the cashier of plaintiff, deposited the sum of $1,413.50 with the plaintiff in a special account known as the "Moore-Menasco Escrow Account, C. A. Chambers, Secretary," to secure the faithful performance by him of his special indorsement contract; and that thereafter from time to time there was deposited to such escrow account various sums, making the total deposited to said escrow account the sum of $2,084.55. That there was properly paid out of said escrow account, according to the terms and conditions thereof, the sum of $———, and no more, leaving a balance in said account of $1,184.55.

Plaintiff in its reply admits the execution of the "Special Indorsement Contract," and admits the creation of the escrow account, and the deposit of the various sums therein as alleged by the defendant. It further alleges that after its execution, and after the creation of the escrow account, the "Special Indorsement Contract" was waived and set aside by an executed oral agreement, by the terms of which the defendant E. E. Menasco agreed that he would become responsible for and that the escrow account might be charged with 55 per cent. of any notes which the officers of plaintiff deemed uncollectible.

The evidence in this case is quite voluminous. The facts, briefly stated, seem to be these: The defendant E. E. Menasco sold 55 shares, being 55 per cent. of the capital stock of plaintiff, to J. E. Moore, who was acting for himself and as the agent of several other persons in the pur-

chase of such stock. At the time the sale of the stock was made, the "Special Indorsement Contract," set out above, was executed by the defendant E. E. Menasco, but before Moore made final payment of the purchase price of the stock it was demanded of defendant E. E. Menasco that he make a deposit with the plaintiff as a guaranty of the performance of his "Special Indorsement Contract." To this he agreed, and deposited of his funds with the plaintiff $1,413.50. It was agreed between him and Moore and C. A. Chambers, cashier of plaintiff, that this money should be placed in a special account which was designated the "Moore-Menasco Escrow Account, C. A. Chambers, Secretary," and that C. A. Chambers, the cashier of plaintiff, should be authorized to charge against such account any losses of the plaintiff upon notes for which the defendant E. E. Menasco was liable under the terms of his special indorsement contract to the extent of 55 per cent. of such losses. The defendant was out of the state for some months, and upon his return, on July 27, 1911, some losses in the meantime having been charged against the escrow account, and same having been reduced, Moore and the cashier of plaintiff went to the defendant and requested him to make an additional deposit in the escrow account, to which the defendant agreed, and deposited the sum of $506.21 in such account. It seems that other small amounts were deposited in such account by the officers of plaintiff, being funds that belonged to the defendant, bringing the total deposited in the account up to the sum alleged in the cross-petition of defendant. The account seems to have remained in this condition practically until 1912, when, during the months of January and February, C. A. Chambers, the secretary of the account and cashier of plaintiff, paid out to Moore and his associates, of whom the cashier was one, all of the money in this account, ex-

cept the sum of $149.80, which was paid to the plaintiff on December 8, 1912, after the commencement of this action, by said C. A. Chambers. The evidence is in conflict as to whether or not the terms of the special indorsement contract executed by defendant was ever specifically changed. Witnesses for the plaintiff testified to a subsequent oral agreement, at the time the deposit of $506.21 was made by defendant, and that the "Special Indorsement Contract," so far as the same required the giving of notice to defendant and the taking of action by the plaintiff upon any notes within 30 days after their maturity, was abrogated, and the cashier of plaintiff was authorized to charge the escrow account with 55 per cent. of any unpaid notes which the officers of the bank deemed uncollectible, without notice to the defendant. The defendant denies any such agreement, and testifies that each of the deposits in the escrow account made by him were deposited with the agreement and understanding that these funds were deposited to guarantee the performance by him of his "Special Indorsement Contract" according to the terms and conditions thereof. In this he is corroborated by a witness who was at the time assistant cashier of the bank. The evidence discloses that notice was given defendant of the action of plaintiff in the collection of past-due notes in only four cases; the notices consisting of copies of letters written by the cashier of plaintiff to the payers of notes and mailed to defendant on April 19, 1911. The evidence of C. A. Chambers details the efforts made by plaintiff to collect several other notes. But it seems from the record that no evidence as to when action was taken to collect these notes, with reference to the date of their maturity, was given. On March 12, 1912, and before the commencement of this action, the defendant went to the banking house of plaintiff and endeavored to have a

settlement of the escrow account with C. A. Chambers, the cashier of plaintiff, and endeavored to apply the balance remaining in said account, as claimed by defendant, who testified that he was told the amount of such balance by Chambers, to the satisfaction of the note sued on. Chambers refused to settle up the escrow account, or to apply the same to the satisfaction of the note held by plaintiff against the defendant, on the ground that the "Special Indorsement Contract" had been abrogated, and also because Moore was not present to agree to an adjustment of the account. Immediately thereafter plaintiff began action to recover upon the note of defendant.

*B. M. Parmenter* and *Arch M. Parmenter*, for plaintiff in error.

*Johnson & Stevens*, for defendants in error.

Opinion by RUMMONS, C. (after stating the facts as above). The plaintiff complains in its first specification of error of the action of the court in overruling its objection to any statement being made with reference to the cross-petition of defendant; and of the overruling of its objections to the introduction of evidence on the part of defendant; and of the overruling of its demurrer to the evidence offered by defendant. It is contended on behalf of plaintiff that the "Special Indorsement Contract" made by the defendant was a contract between him and J. E. Moore; and that, as the special deposit was made by defendant pursuant to such contract and to guarantee its performance by him, it was necessary that defendant and J. E. Moore have settlement on this "Special Indorsement Contract" before the defendant could claim or the plaintiff pay over any funds in the special deposit. It is further contended that the bank was not a party to the agreement between Moore and Menasco, but merely a

custodian of the funds, that it had no other duty in the premises than to safely care for the funds in accordance with the agreement under which it was deposited, and that the defendant could have no claim against it for the funds in such deposit until a settlement was had between him and J. E. Moore. It is therefore urged that inasmuch as the cross-petition does not show any such settlement, and as the evidence also fails to show it, the objections to the statement, and to the introduction of evidence, and the demurrer to the evidence, should have been sustained.

We think the plaintiff is in error in its interpretation of the "Special Indorsement Contract." While the contract is signed by J. E. Moore, as well as the defendant, from a perusal of it, it is apparent that there was no obligation to or liability on the part of said J. E. Moore expressed in the terms of said contract. The contract clearly expresses an agreement on the part of defendant to indorse all notes held by the plaintiff, and to pay 55 per cent. of any and all losses sustained by the plaintiff in the event said notes were uncollectible. It further creates an obligation on the part of the plaintiff to use every effort to collect said paper, and to exhaust all security upon said notes; the plaintiff is further obligated to take action for the collection of said notes within 30 days after maturity thereof. It seems clear that J. E. Moore had no part in this contract; that he was to receive no benefits therefrom, except such benefits as might accrue to him as a stockholder. It further appears from the contract that the defendant was to become the owner of 55 per cent. of each note or overdraft uncollected which was paid by him. It is certain that Moore, as a stockholder of the plaintiff, could not convey any interest in the notes

owned by the plaintiff. The evidence also discloses that the plaintiff paid back to the special account of defendant sums which had been charged to such account upon notes which were afterwards collected. This "Special Indorsement Contract" is witnessed by C. A. Chambers and I. V. Pruitt, who at the time were, respectively, cashier and assistant cashier of the plaintiff. It seems clear to us that this contract was made for the benefit of plaintiff; that plaintiff had knowledge of it and its contents, and accepted the benefits thereof and acted upon the terms thereof to some extent. We think the court committed no error in overruling the objections to the statement and the introduction of evidence and the demurrer to the evidence.

In specification of error No. 2, plaintiff complains of the overruling of its motion for new trial; that the court erred in not rendering judgment for plaintiff against defendant; that the court erred in overruling plaintiff's objection to the introduction of evidence of defendant; and that the court erred in overruling objections to the introduction of the "Special Indorsement Contract." We think this specification of error is without merit for the same reasons that render the complaints embodied in specification No. 1 of no avail.

Specifications of error 3, 4, 5, 6, 7, and 8 go to objections to the introduction of evidence. We do not think it would serve any good purpose to set out the questions and objections in detail. We need only notice one objection, which goes to the testimony of the defendant as to what was said at the time the first deposit was made by him in the special account. The objection was on the ground that the evidence was an attempt to vary the terms of a written contract. We think the evidence was clearly admissible as showing how the defendant came to deposit

the money with the plaintiff, and that it did not in any way tend to vary the terms of the written contract set up by defendant.

Specifications Nos. 9, 10, and 11 complain of the admission by the court of a check drawn by defendant on the Moore-Menasco account, and of a check drawn by defendant upon his individual account, in amounts sufficient to pay the note of defendant held by plaintiff. We think these were clearly competent, as showing tender of payment by defendant, and a request on his part that the balance in the special account be applied to his note. Specification No. 11 complains of testimony, admitted over objection, that neither plaintiff nor Mr. Moore had ever tendered defendant any part of the notes, 55 per cent. of which were coming to him on account of the escrow account. Any error there may have been in admitting this evidence was harmless, and could have resulted in no prejudice to the plaintiff.

Specification of error No. 12 assigns error in the admission of four checks drawn on the Moore-Menasco account by C. A. Chambers, distributing about $1,000 of that account to himself and Moore and others who were interested with them in the purchase of the stock of defendant in the plaintiff bank. We think the court committed no error in admitting this evidence. It was competent as showing the amount in the account at the time the checks were drawn. It also tended to show that it was not necessary for the bank to hold this money to take up past-due notes under the "Special Indorsement Contract" of defendant.

Specifications of error Nos. 13 and 14 go to the introduction of evidence, also to the overruling of motions of

plaintiff for a directed verdict, and for judgment in favor of the plaintiff against the defendants. We think the evidence objected to was competent, and the overruling of the motions for directed verdict and for judgment have already been considered and disposed of.

The plaintiff complains of the giving by the court of instruction No. 2, and of the refusal of instructions requested by plaintiff. We have examined the entire charge given by the court to the jury, and we think it fully. and fairly covers the issues between plaintiff and the defendants in this case, and that the court committed no error in refusing the instructions requested by plaintiff, for the reason that those instructions requested which were not fully covered by the charge given by the court did not correctly state the law applicable to the issues in this case. We do not deem it necessary to extend the instructions given and requested in full in this opinion.

The final specifications of error complain of the overruling of plaintiff's motion for new trial, and of the overruling of its motion for judgment. The case was presented to the jury under instructions which fully covered the issues arising out of the pleadings in the case. The evidence discloses that the funds in the special deposit made by the defendant were for the security of plaintiff, and were to be applied by it upon its uncollectible paper, under the conditions set out in the "Special Indorsement Contract," and could not be so applied, except under such conditions. *Smith v. Sanborn State Bank,* 147 Iowa, 640, 126 N. W. 779, 30 L. R. A. (N. S.) 517, 140 Am. St. Rep. 336. There was evidence offered which would warrant the jury in finding that, as to the notes which are sought to be charged against his special deposit, the plaintiff had wholly failed and neglected to comply with any of the conditions

of the contract. If the jury so found, there was evidence sufficient to warrant them in finding that the funds in this special deposit were to be charged only in accordance with the terms of the "Special Indorsement Contract," and that the funds so remaining belonged to the defendant. This being the case, defendant was entitled to set off against plaintiff's demand the amount remaining in the special deposit.

There being no error in the record, and there being evidence tending to support the verdict of the jury, the verdict should not be disturbed, and the judgment of the court below should be affirmed.

By the Court: It is so ordered.