## MIDLAND VALLEY R. CO. v. RIPPE.

No. 6954.—Opinion Filed Nov. 14, 1916.

Rehearing Denied Dec. 5, 1916.

(161 Pac. 233.)

**1. Appeal and Error—Review—Jury Question.**

The question of actionable negligence is ordinarily for the jury, and where there is evidence or inferences that may be drawn therefrom, reasonably tending to support the findings of the jury that there was actionable negligence which was the proximate cause of the injury suffered, this court will not disturb such verdict.

**2. Poisons—Liability for Keeping—Duty.**

Where a poisonous compound is kept upon the right of way of a railroad company, it is its duty to keep such poisonous compound in a safe place, and whether or not the place in which such poisonous compound is kept in a safe place is a question of fact for the jury.

**3. Poisons—On Railroad Right of Way—Duty of Care.**

While a railroad company is not required to fence its right of way at depots and crossings, it is its duty to properly fence or otherwise so guard a poisonous compound kept upon its right of way as not to leave the same accessible to trespassing cattle.

**4. Pleading — Amendments — Trial Amendments.**

Under the liberal rules of pleadings in this state, it is not an abuse of judicial discretion to permit, after the close of the evidence, an amended petition to be filed which does not state a different matter—another subject of controversy—than the one stated in the original petition, and does not substantially change the action or its defense.

**5. Same.**

The amended petition allowed to be filed in this case carefully examined, and held that the court did not commit a breach of discretion in permitting the same.

**6. Trial—Instructions—Refusal.**

Requested instructions, predicated only upon part of the pleadings and evidence in the instant case, were properly refused.

**7. Poisons—Actions—Instructions — Sufficiency.**

Instructions, given and assigned as errors in the instant case, carefully examined, and found to correctly state the law.

**8. Trial—Jury Question—Directed Verdict.**

The jury are the sole judges of the facts and the inferences to be drawn therefrom, and where there is any evidence or inferences to be drawn therefrom reasonably tending to sustain a petition stating a cause of action, it is prejudicial error to sustain a demurrer to the evidence, or to direct a verdict for the defendant.

**9. Poisons—Right to—Denial.**

The record in this case carefully examined, and it is found that the court did not err in refusing defendant a new trial.

(Syllabus by Collier C.)

Error from District Court, Osage County; R. H. Hudson, Judge.

Action by John Rippe against the Midland Valley Railroad Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

A. R. Museller, for plaintiff in error.

Farrar L. McCain and O. E. Swan, for defendant in error.

Opinion by COLLIER, C. This is an action brought by the defendant in error against the Midland Valley Railroad Company and board of county commissioners of Osage county, to recover damages for the loss of 28 head of cattle, alleged to have been caused by said cattle drinking poisonous water, which, by negligence of the plaintiff in error, flowed from a dipping vat on the right of way of said company adjacent to the land of the defendant in error, upon the lands of defendant in error. Hereinafter the parties will be designated as they were in the trial court.

At the conclusion of the plaintiff's evidence, each of the defendants demurred to the evidence of the plaintiff, which demurrer was sustained as to the said board of county commissioners, and the said cause dismissed as to the said board. The demurrer of said company to the evidence was overruled, to which the said company duly excepted. At the conclusion of the evidence the said company moved for an instructed verdict in its favor, which was overruled and excepted to. Thereupon the plaintiff moved to amend his petition so as to conform to the evidence, to which the defendant company objected. The court permitted the petition to be amended as moved, to which the defendant duly excepted. The material allegations of the petition as amended are that the defendant company maintained dipping vats, storage tanks, and cooking pans on its right of way, which contained certain poisonous waters, and that the said defendant failed and refused to protect the same from stock by keeping up its fences around and about the same, and also neglected to protect the same from a rain which fell, and because of such neglect to protect the same as was its duty to do, said dipping vats and cooking pans were filled to overflowing by said rain; that some of said water so poisoned ran into the pasture of plaintiff and around said vats and pans and upon the grounds adjacent to said vats and

pans, and same was left standing in the cooking vats on said premises, the same not being properly fenced and protected; that by reason of said neglect of the defendant the cattle of said plaintiff drank of the poisoned water in the said pasture of plaintiff, and also escaped through the defective fence in and around the said vat and cooking pans, and drank out of the pools of poisoned water near said vat and out of said vat, and that by reason of drinking said poisoned water, so negligently made accessible, the said 28 head of cattle died.

The uncontradicted evidence is that the plaintiff owned pasture lands adjacent to the right of way of the defendant company, and that upon said right of way the said company maintained a dipping vat and the other paraphernalia for dipping cattle for the eradication of Texas ticks; that the said "dip" was composed of arsenic and other materials; that a large quantity of said dip was left in said vats and dipping pans; that on the 7th of June, 1913, a heavy rain came, which caused the said vats to overflow, and part of such overflow to flow upon the lands of plaintiff and form a pool; that on the 8th day of June, 1913, and within 2 or 3 days thereafter, 28 head of said cattle suddenly died; that there were tracks of cattle around said dipping vat and pools of water near the same; that in the cooking pan was a solid substance, which was shown by analysis thereof to contain some 14 per cent. of arsenic, and that samples of water from said vat had been analyzed and shown to contain arsenic.

The evidence was in conflict as to the condition of the fence around the vat, and whether or not the gate which opens to the vat was shut or closed, and whether or not the cattle gained access to said vat and pans through the gate or through a defective fence. It was further shown in evidence that the dipping vat and pans belonged to the said company, and that the dipping vat had been used by Osage county.

There was expert testimony as to the quantity of arsenic that it would take to kill an animal, but the same was in conflict, and there was no direct evidence as to what quantity of water which had been poisoned the cattle drank, or what quantity of arsenic had been licked from the pan, while there was evidence tending to show that the licking by the cattle of the solid substance which was left in the pan would produce death.

Against the objection and exception of defendant, an expert witness was asked:

"What would you say as to the possibility or probability of stock grazing in a pasture within the width of the railroad right of way, plus 95 yards, being poisoned by overflow or seepage from a dipping vat, storage pan, and cooking pan, after a heavy rain, by water flowing into the pasture and into the pools from which they drank?"

To which the witness answered:

"Well, it would be possible there would be enough go through that might kill, but I don't know how much went through, or anything like that."

Also, against the objection and exception of the defendant, a witness was asked the condition of the fence "in the spring," and answered, "It was in bad shape." The smallest valuation of the cattle that died, shown by the evidence, was—together with the expense of burying the same, and the interest thereon—less than the verdict rendered.

Of the instructions given by the court instructions numbered 1, 4, 5, and 6 were duly excepted to, respectively, and are assigned as errors. Said instructions read:

"(1) You are instructed that this is an action by the plaintiff, John Rippe, against the defendant, Midland Valley Railroad Company, to recover damages for the loss of 28 head of cattle, which the plaintiff claims died as the result of the negligent acts of the defendant company. Plaintiff claims in his petition that the defendant, on or about the 8th day of June, 1913, was the owner of and had in his possession and under his control certain dipping vats, storage tanks, cooking pans, paraphernalia, lands, and fences, the same being located on or near the right of way of the defendant near the town of Foraker, Osage county, Okla. That said vats, storage tanks, and cooking pans were, on and before the date mentioned, filled with certain poisonous waters which had theretofore been used in dipping cattle to remove from them what is commonly known as the cattle tick. That the defendant railroad company, being the owner of and in the possession and control of said dipping vat, storage tank, cooking pans, and paraphernalia, neglected and refused to protect the same from stock by keeping up its fences around and about the same, and also neglected to protect the same from a rain which fell on or about the 8th day of June, 1913, and that because of such neglect to protect the same said dipping vats, storage tanks, and cooking pans were filled to overflowing by said rain, and that some of said water, so poisoned, ran away from said vats across the railroad right of way and into the pasture of the plaintiff, and around the vats, and over the ground adjacent to said vats, same being left standing in the cooking vat on said premises, the same not being properly fenced and protected, and that the fences of defendant along its right of way in the immediate vicinity were not properly kept up, and that by reason of this neglect on the part of the defendant, the cattle of plaintiff drank of the poisoned water

in the said pasture of plaintiff, and also escaped through the defective fence of defendant in and around the vats, cooking pan, and paraphernalia of defendant, and drank out of the pools of poisoned water near said vat, and out of said vat, and that by reason of said drinking said poisoned water, so negligently made accessible to the cattle of plaintiff, 28 head of said cattle died, to the plaintiff's damage in the sum of $1,234; and plaintiff prays for judgment against the defendant for the said sum of $1,234, with interest thereon from the 8th day of June, 1913. The defendant has filed an answer, in which it denies each and every material allegation contained in the plaintiff's petition, and under the issues thus joined the burden of proof is upon the plaintiff to prove to your satisfaction the material allegations of his petition by a fair preponderance of the evidence before you would be warranted in returning a verdict for the plaintiff and against the defendant."

"(4) You are instructed that the Midland Valley Railroad Company had the right to have upon its right of way vats for the purpose of dipping cattle, in order to remove therefrom and to eradicate from the county the fever tick, and had the right to use said vats for the said purpose, and to permit any other person, or persons, to use the same for such purposes, and had the right to use in said vats, for the purposes of such dipping, an arsenical dip such as has been testified to by the witness in this case. But in this connection you are instructed that it was the duty of the railroad company, and all other persons using the said vat for the purpose of dipping cattle, in such arsenical dip, to properly guard the said vats, and to use the same and said dip that injury would not result to other persons or their property. And in this connection you are instructed that if you find from a fair preponderance of the evidence that the officers, agents, and servants of Osage county were permitted, by the defendant Midland Valley Railroad Company, to use the dipping vats, storage tanks, cooking vats, and other paraphernalia used in connection with the dipping of cattle upon the right of way of the Midland Valley Railroad Company, and that the officers, agents, and servants of Osage county did use the said vats and other paraphernalia for the purpose of dipping cattle, and did use in said vats the arsenical dip that has been testified to by the witnesses in the case, and you further find from a fair preponderance of the evidence that said dip was of a poisonous and dangerous character, then it was the duty of the railroad company, and of all persons using the said vats, by or with its permission, to use and exercise ordinary care in handling of said dip and in properly guarding the same to prevent its escaping upon the land of adjacent owners, and in order to prevent cattle from coming upon the right of way, and either drinking the said dip in solution or eating the ingredients thereof, and if you find from a fair preponderance of

the evidence that the railroad company, or any person or persons using the said vats with its permission, failed to exercise ordinary care, that is, such care as an ordinarily reasonable prudent person would have exercised under the same or similar circumstances, to prevent the said dip from escaping from the said premises, or in preventing cattle of adjacent landowners from coming upon the premises and drinking or eating the said dip or its ingredients, and you further find that as the result of the failure upon the part of the defendant company, or such other person, or persons, acting by or with its consent, dip was left in said vats, and because of rain the same were caused to overflow and to flow upon the land of the plaintiff in this case, and that his cattle drank thereof and died, or the plaintiff's cattle came upon the premises where the said vats were located and ate or drank of the said dip or its ingredients, and as a result thereof died, then and in that event your verdict in this case should be for the plaintiff, and against the defendant.

"(5) You are instructed that the burden of proof is upon the plaintiff to show, by a fair preponderance of the evidence: First, that on or about the 8th day of June, 1913, there was in the dipping vat on the railroad right of way poisonous matter of sufficient quantity and strength so that, mixed with enough rainwater to cause the vat to overflow, the overflow therefrom would be dangerous to cattle if drank by them; second, that on or about said date there was a rain, and that such rain caused said vat to overflow; third, that the overflow from said vats flowed across and along the right of way of the railroad company into the pasture of the plaintiff; fourth, that when said overflow reached the plaintiff's pasture, it contained sufficient of the poisonous matter alleged to have been contained in said vat to be dangerous to cattle which might drink it; fifth, that plaintiff's cattle did drink such overflow water; sixth, that they drank it while they were in the pasture of the plaintiff; and, seventh, that they died therefrom. Or else the burden is upon the plaintiff to show by a fair preponderance of the evidence, that poisonous matter was left upon the right of way of the defendant company, and that because of failure to exercise ordinary care in safeguarding such poisonous matter, the cattle of plaintiff entered upon the premises of the defendant company and ate or drank of such poisonous matter, and as a result thereof died. If the plaintiff has failed to prove, by a fair preponderance of the evidence one or the other of these propositions, then the plaintiff cannot recover in this case, and your verdict should be for the defendant.

"(6) You are instructed that if you find from the evidence that a rain fell on the 8th day of June, 1913, and caused the vat to overflow, and that said overflow flowed into plaintiff's pasture and caused the damage to

the cattle shown by the evidence, if any, the mere failure on the part of the defendant to protect the vat from overflow would not render the defendant liable, but, in addition to the other elements necessary for you to find, as stated in the other instructions given you, before you can return a verdict for the plaintiff, you must find that there was negligence in failing to protect the said vats; and in order to find such negligence, you must find, from a fair preponderance of the evidence, that the defendant, or some other person acting for it or with its permission, failed to exercise ordinary care in guarding the said vats, and as a result thereof the cattle of the plaintiff came upon the premises and ate or drank of the contents of the said vat; or you must believe from a fair preponderance of the evidence that an ordinarily prudent man would reasonably have anticipated that such a rain would fall as would cause the vat to overflow, and that such overflow would flow thence into plaintiff's pasture, and you must further find that an ordinarily prudent man would reasonably have anticipated that such overflow from the vat, after flowing over the right of way and then into plaintiff's pasture, if it did so overflow, would, after reaching such pasture, contain sufficient poisonous matter to kill cattle if they drank it; and if the plaintiff has failed to show to your satisfaction, by a fair preponderance of the evidence, then the plaintiff cannot recover in this case, and your verdict should be for the defendant."

The defendant requested the court to give the jury instructions respectively numbered 1 and 8, which the court refused to do, to which action of the court the defendant duly separately excepted. Said requested and refused instructions, which are assigned as error, read:

"(1) The burden of proof is upon the plaintiff to show by a fair preponderance of the evidence: First, that on or about the 8th day of June, 1913, there was a dipping vat on the railroad right of way containing poisonous matter of sufficient quantity and strength so that, mixed with enough rainwater to cause the vat to overflow, the overflow therefrom would be dangerous to cattle if drunk by them; second, that on or about said date there was a heavy rain, and that said rain caused said vat to overflow; third, that the overflow from said vat flowed across and along the right of way of the railroad company into the pasture of the plaintiff; fourth, that when said overflow reached the plaintiff's pasture, it contained sufficient of the poisonous matter alleged to have been contained in said vat to have been dangerous to cattle which might drink it; fifth, that plaintiff's cattle did drink such overflow water; sixth, that they drank it while they were in the pasture of the plaintiff; and seventh, that they died therefrom. If the plaintiff fails to prove by a perponderance of the evidence any one of the elements, or if the evidence of any one of these

elements is, in your judgment, evenly balanced, the plaintiff cannot recover in this case, even if he proves all of the remaining elements by a preponderance of the evidence."

"(8) If you find from the evidence that a rain fell on the 8th day of June, 1913, and caused the vat to overflow, and that said overflow flowed into plaintiff's pasture and caused damage to the cattle shown by the evidence, if any, the mere failure on the part of the defendant to protect the vat from the overflow would not render the defendant liable, but in addition to the other elements necessary for you to find, as stated in the other instructions given you, before you can return a verdict for the plaintiff, you must find that there was negligence in failing to protect the vat from overflow by rain; and in order to find such negligence, you must believe from the evidence that an ordinarily prudent man would reasonably have anticipated, considering the season and weather usually prevailing at that season in that vicinity, that such a rain would fall as to cause the vat to overflow, and that such overflow would flow thence into plaintiff's pasture, if in fact it did so flow, and you must further find that an ordinarily prudent man would reasonably have anticipated that such overflow from the vat, after flowing over the right of way and then into plaintiff's pasture, if it did so flow, would, after reaching said pasture, contain sufficient poisonous matter to kill cattle if they drank it."

The jury returned a verdict for the plaintiff in the sum of $1,082.73, to which the defendant duly excepted. Within the statutory period, the defendant filed a motion for a new trial, which was overruled, and judgment was entered upon the verdict, to which the defendant duly excepted. To reverse the judgment rendered, this proceeding in error is prosecuted.

The defendant bases a reversal of the case upon the following assignments of error: (1) Overruling demurrer to plaintiff's evidence; (2) Overruling motion for an instructed verdict; (2½) permitting plaintiff to amend his petition; (3) overruling objection to question to plaintiff as to condition of fence in the spring of 1913; (4) overruling objection to hypothetical question propounded to Mr. Kauffman; (5) giving instructions respectively numbered 1, 4, 5, and 6; (6) refusing requested instructions respectively numbered 1 and 8; (7) overruling motion for a new trial; and (8) rendering judgment for the plaintiff.

In reviewing the several assignments, we will do so as we think the same logically should be considered, and not in the order assigned:

If the court erroneously overruled the demurrer to plaintiff's evidence at the close

thereof, which we do not hold, the evidence and the inference that can be drawn therefrom, that was introduced by the defendant after the overruling of said demurrer, in our opinion, in connection with plaintiff's evidence, conclusively shows that the court did not err in overruling the demurrer to the evidence.

"A demurrer to evidence admits every fact * * * which the evidence most favorable to the other party tends to prove, but where the court erroneously overrules such a demurrer, and afterward the defect in the evidence is supplied by other evidence, introduced by either party, the error is cured." Henry Stephens v. Isaac Scott et al., 43 Kan. 285, 23 Pac. 555.

The defendant devotes a large part of its brief, and presents many authorities, to support its contention that the court erred in permitting plaintiff, at the conclusion of the evidence, to amend his petition. We are unable to see that by the amendment there was a departure from the original cause of action, or that the amendment "changed substantially the claim or the defense."

It is true that at the time of the interposition of said demurrer to the plaintiff's evidence, the only negligence averred in the petition was permitting the poisoned water to overflow upon the pasture of plaintiff; while under the amended petition, additional grounds of negligence were alleged in maintaining the vat and paraphernalia connected therewith and failing to properly protect the same. In the original petition and in the amended petition, each was predicated upon the negligence on the part of the defendant in maintaining the dipping vat and its accessories, and the injuries sustained are alleged to be the loss of the cattle due to said negligence. In the amended petition the negligence averred is also based upon the negligence of the defendant in maintaining the same dipping vat as averred in the original complaint, and only adds additional grounds of negligence—the defective fence and failure to properly guard the said vat; and we are unable to see how there is any departure from the original cause of action as alleged in the original complaint.

"The allowance of an amendment not substantially changing the claim of defense rests in the court's sound discretion." Shawnee, Tecumseh Traction Company v. Newcome, 59 Okla. 271, 158 Pac. 1193.

"The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony." Fulsom-Morris Coal & Min. Co. v. Mitchell, 37 Okla. 575, 132 Pac. 1103.

Applying the test stated in the above-styled cause, we are clearly of the opinion that the amendment is not a different matter, another subject of controversy, but simply the same matter more fully and definitely laid to meet the additional testimony that was introduced in the cause.

We fully agree with the defendant that a proper opportunity should have been given the defendant to properly try their cause, and that they should not be put at a disadvantage by reason of amendments made after the evidence was closed, which they have not had an opportunity to meet; but, if the defendant was taken by surprise by such amendment, and was not prepared at that time to meet the same, then the proper procedure would have been to ask for additional time in which to prepare the defense, and if this be refused, we think it might show abuse of discretion on the part of the court. In the instant case no request was made for additional time in which to prepare to meet or defend against the allegations of the amended petition. Under the liberal rules of pleading in this state, we are of the opinion that the court did not abuse its discretion in permitting the filing of the petition as amended.

We have carefully considered the objection to the question propounded to the witness as to the condition of the fence in the spring of 1913, and we are unable to agree with the learned counsel of defendant that the court committed error in overruling objection to the same. While probably the evidence would have been more satisfactory had the time been more definitely fixed, we think it was pertinent to prove the condition of the fence prior to and so approximately near the time that it is alleged that the injuries herein complained of were suffered.

The hypothetical question, propounded to the witness, "as to the possibility or probability of stock grazing in a pasture within the width of a railroad right of way, plus 95 yards, being poisoned from an overflow or seepage from dipping vats, storage tank and pan, after a heavy rain by water flowing in the pasture and into the pools from which they drank," we think was properly permitted by the court to be asked, as there was evidence in the case upon which to base such hypothetical question. Of course, the substance of a hypothetical question must have a direct and intimate connection with the testimony in the case; otherwise the attention of the jury would be distracted from the issue, and the very object of hearing the evidence defeated. But it is sufficient if the question fairly states such facts as proof of the examiner fairly tends to establish and fairly presents his claim or theory. Jones,

Commentaries on Evidence, vol. 2, section 371.

We have carefully examined the several instructions given by the court and excepted to by the defendant and assigned as errors, and are unable to say that said instructions do not clearly state the law. Instruction No. 1 simply states the issues involved in the trial of the cause, and we think does so without prejudice to the defendant. Instructions Nos. 4, 5, and 6, also, we think, clearly state the law, and certainly do so as fairly to the defendant as could possibly be asked. Many requested instructions were asked which were refused, but only the refusal to give instructions respectively numbered 1 and 8 are assigned as error. Requested and refused instruction No. 1 we think was properly refused upon the ground that the said instruction only takes into consideration that the negligence complained of was the overflow of the vat and the flowing of the poisoned water upon the lands of the plaintiff, while the pleadings in the case as made by the amended petition, and the evidence, includes, not only the negligence of permitting the poisoned water to flow upon the land of plaintiff, but also bases his right of action upon the negligence of the plaintiff in failing to properly safeguard the said dipping vat, failure to properly fence the same, and failure to discharge its duty in permitting the pools of poisoned water to exist near the said vats on the premises of the defendant and accessible to the stock for whose loss this action is instituted.

We are further of the opinion that the refused requested instruction No. 8 is tainted with the same vice as that of requested instruction No. 1.

Unquestionably there was sufficient evidence for the jury to determine that the death of the cattle was due to drinking the poisoned compound which flowed from the dipping vat, and in drinking from the vat and licking the compound contained in the vessels connected with said dipping outfit. It is true that the expert evidence as to the quantity of arsenic necessary to produce death was in conflict, but there was evidence upon which the jury could reasonably conclude that a sufficient quantity of poisoned water, and a sufficient quantity of the poisonous matter contained in the dipping vat and pan and pool near the same, was taken by the cattle to produce death. Of course, though the death of the cattle was due to drinking the poisoned water or licking the poisonous compound, the defendant would not be liable unless the negligence of the defendant was the proximate cause of the death of the cattle, and this question of negligence was a question of fact for the jury. C., R. I. & P. R. Co. v. Hill, 36 Okla. 540, 129 Pac. 13, 43 L. R. A. (N. S.) 622.

Many cases are cited by the defendant as to the duty of a railroad company, and its exemption from liability, when its right of way is properly fenced as to killing stock which stray upon its right of way, which we think correctly state the law, but we cannot agree with the learned attorneys of defendant that said cases are in point in the instant case. There is a different rule of law as to the care that must be exercised in safeguarding poisons upon one's premises, to the end that the property of another may not be injured thereby, and we do not think that, because the defendant was not required to fence its right of way at its depots or crossings, said exemption in any way tended to relieve it from properly protecting, even as against trespassing animals, by fencing or otherwise, as might be necessary, said poisonous compound contained in said dipping vat and its paraphernalia. Section 2531, Revised Laws 1910, provides:

"Whoever shall, except in a safe place on his own premises, lay out strychnine or other poison, is guilty of a misdemeanor."

We think that said section indicates clearly that it is the policy of our law to require one having poison upon his premises to exercise more than ordinary care to avoid danger to others or their property; and, when a poisonous compound, as shown by the evidence in this case, was permitted to remain upon the right of way, and not properly safeguarded to prevent the approach of cattle thereto, there was sufficient evidence to authorize the jury to find that the said poisonous compound was not kept in a safe place, and that the defendant was consequently guilty of actionable negligence and liable for the death of the trespassing cattle.

"In order for the violation of a criminal statute to constitute actionable negligence, the injury complained of must be of the sort the legislation was intended to prevent." Denton v. M., K. & T. R. Co., 90 Kan. 51, 133 Pac. 558, 48 L. R. A. (N. S.) 820, Ann. Cas. 1915B, 639.

We think that said section 2531 was intended to prevent such negligence as is shown by the evidence in the instant case.

"Persons using dangerous agencies are required to use the utmost care to prevent injuries, and to adopt every known safeguard." 29 Cyc. pp. 460-463.

In M., K. & T. R. Co. v. Rose, 61 Oklahoma, 160 Pac. 734, Judge Galbraith, speaking for this court, says:

"The company is bound to have known

the 'dangerous character of this dip. When, with this knowledge, this poisonous fluid was permitted to escape from the tank and accumulate in a pool accessible to the cow, and no steps were taken to prevent her from drinking it, the company failed to discharge the duty it owed her, even though she was, as contended by the plaintiff in error, a trespasser."

We therefore think that the jury had sufficient evidence upon which to find that the defendant was guilty of actionable negligence.

There being evidence to reasonably sustain the jury in finding that there was actionable negligence on the part of the defendant which was the proximate cause of the death of the cattle, and, it not being contended that the verdict of the jury was excessive, and the verdict of the jury having been approved by the trial court, we are powerless to interfere with the verdict rendered.

"A general finding in favor of a party includes a finding of all those facts necessary to constitute the claim of the party in whose favor the finding is made." Oland v. Malson, 39 Okla. 456, 135 Pac. 1055; Davis v. First State Bank of Norman, 51 Okla. 51, 152 Pac. 122; Theo. Maxfield Co. v. Andrus, 56 Okla. 247, 155 Pac. 1163; Schultz v. Barrows, 8 Okla. 297, 56 Pac. 1053; Brewer & S. v. Black, 5 Okla. 57, 47 Pac. 1089.

"A verdict [reasonably] supported by evidence will not be disturbed on appeal." Crane v. Franklin, 17 Ariz. 476, 154 Pac. 1036; Apple v. French, 53 Okla. 72, 154 Pac. 659; First State Bank of Indiahoma v. Menasco, 55 Okla. 748, 155 Pac. 261.

"A verdict upon conflicting evidence will not be disturbed when reasonably supported by evidence." Harrell v. Scott, 51 Okla. 373, 151 Pac. 1169.

Having reached the conclusion that there was evidence in the case reasonably supporting the verdict of the jury, it necessarily follows that we find no error in the refusal of the court to direct a verdict for the defendant.

"A motion to direct a verdict leaves for consideration only such evidence as is favorable to the party against whom the motion is directed." Buckeye Engine Co. v. City of Cherokee, 54 Okla. 509, 153 Pac. 1166.

"A motion to direct a verdict admits the evidence of the opposite party and all reasonable inferences which can be drawn therefrom." Bowles v. Biffles, 50 Okla. 587, 151 Pac. 193; Supreme Tribe of Ben Hur v. Owens, 50 Okla. 629, 151 Pac. 198, L. R. A. 1916A, 979; Shields v. Smith, 50 Okla. 548, 151 Pac. 207.

"Where there is any evidence reasonably tending to establish plaintiff's claim, it is error to direct a verdict." Scott v. Moore, 52 Okla. 200, 152 Pac. 823; Alexander Drug Co. v. O'Dell, 52 Okla. 662, 153 Pac. 114; Stewart v. Lafayette, 55 Okla. 411, 153 Pac. 847."

"Issues in an action should be submitted to the jury where there is any evidence reasonably tending to support the plaintiff's contentions." Kali Inla Coal Co. v. Ghinelli, 55 Okla. 289, 155 Pac. 606.

There being evidence reasonably tending to support the verdict and the issues involved having been submitted to the jury under proper instructions, the court did not err in refusing to grant a new trial and in entering judgment on the verdict.

This cause should be affirmed.

By the Court: It is so ordered.