**MOORES v. RUMSEY.**

No. 22124. Sept. 25, 1934.

Roy White, for plaintiff in error.

Clark & Jack Nichols, for defendant in error.

PER CURIAM. This is an action brought by B. F. Rumsey, defendant in error, against D. H. Moores, plaintiff in error, for damages sustained by reason of the death and injury to certain cattle belonging to defendant in error, caused by the cattle eating certain poison placed on the premises by the plaintiff in error.

The parties will be referred to as they appeared in the trial court.

The evidence in the case disclosed that D. H. Moores, defendant, was the owner of certain real estate in McIntosh county, Okla.; that, during the year 1928, D. H. Moores rented the above described tract of land to one John Dunn on shares; that, under these arrangements, the said John Dunn planted a part of said land to cotton; that, for the purpose of killing boll weevils which infested the cotton on said land, D. H. Moores arranged with John Dunn to use a certain preparation of a molasses substance which contained a poison known as "arsenic"; that the said D. H. Moores furnished his tenant, John Dunn, with the barrel of poison, hauling same out to his tenant's place, and instructed him how to apply it on the cotton. The barrel containing that portion of the poison which had not been used was left in the cotton field by said landlord and tenant. That the field in which the poison barrel was left was fenced with one fence, and that the other crops, such as corn and small grain, were in the same field with the cotton patch, where the barrel containing the poison was left.

That, later in the year, Mr. Dunn sold his crops to a Mr. Ritter with Mr. Moores' consent; that Mr. Ritter saw the barrel in the field, but did not know what it contained, and that neither Mr. Dunn nor Mr. Moores ever told him that it contained poison; that, after the crops were gathered, Mr. Ritter negotiated with Mr. Rumsey, plaintiff, and sold him the privilege of pasturing the stalk field on the place owned by Mr. Moores; Mr. Moores was informed of the deal between Mr. Ritter and Mr. Rumsey. The evidence is conflicting as to whether or not Mr. Moores received any part of the proceeds from this deal.

The evidence further shows that, as a result of the cattle eating the poison, seven of them died and three became very sick and were seriously injured by reason of said poison. Plaintiff introduced evidence tending to show the value of the cattle and the amount of damage that he had been to in work, trouble, and other expenses caring for said cattle, for which judgment is herein sought.

There are two questions to be decided on this appeal:

First. Was the landlord, Mr. Moores, liable to the subtenant, Mr. Rumsey?

Second. Was the court's instruction No. 4 prejudicial to the rights of the defendant?

In Midland Valley R. Co. v. Rippe, 61 Okla. 314, 161 P. 233, this court stated:

"Where a poisonous compound is kept upon the right of way of a railroad company, it is its duty to keep such poisonous compound in a safe place, and whether or not the place in which such poisonous compound is kept is a safe place is a question of fact for the jury."

The court further stated:

"Section 2531, Revised Laws 1910, provides: 'Whoever shall, except in a safe place on his own premises, lay out strychnine or other poison, is guilty of a misdemeanor.' We think that said section indicates clearly that it is the policy of our law to require one having poison upon his premises to exercise more than ordinary care to avoid danger to others or their property; and, when a poisonous compound, as shown by the evidence in this case, was permitted to remain upon the right of way, and not properly safeguarded to prevent the approach of cattle thereto, there was sufficient evidence to authorize a jury to find that the said poisonous compound was not kept in a safe place, and that the defendant was consequently guilty of actionable negligence and liable for the death of the trespassing cattle.

" 'In order for the violation of a criminal statute to constitute actionable negligence, the injury complained of must be of the sort

the legislation was intended to prevent.' Denton v. M., K. & T. R. Co., 90 Kan. 51, 133 P. 558, 47 L. R. A. (N. S.) 820, Ann. Cas. 1915 B, 639.

"We think that said section 2531 was intended to prevent such negligence as is shown by the evidence in the instant case.

" 'Persons using dangerous agencies are required to use the utmost care to prevent injuries, and to adopt every known safeguard.' 29 Cyc. pp. 460-463."

In Harte v. Jones, 287 Pa. 37, 47 A. L. R. 843, the Supreme Court of Pennsylvania states:

"The mere fact of a tenant's occupancy of premises when an accident happens would not relieve the landlord from the consequences of his own neglect. * * * Where a landlord is liable for defective construction or condition at and before the tenancy began, the liability continues throughout the tenancy, * * * but, to cause him to be liable, the premises must be so constructed or be in such condition that in and of itself it amounts to a nuisance."

In 16 R. C. L. 1076, art. 594, we find:

"It is the well-settled rule that the landlord is properly chargeable with liability to a stranger where the cause of injury to the latter is a nuisance existing on the premises at the time of the demise. No person can create or maintain a nuisance upon his premises and escape liability for the injury occasioned by it to third persons. Nor can a lessor so create a nuisance and then escape liability for the consequences by leasing the premises to a tenant. Nor is it material that the negligence of the lessee contributed to the injury; that may render the lessee also liable, but it cannot exempt the lessor from liability. Indeed, the nuisance may be merely passive until some agency of the lessee intervenes, and the lessor will still be liable. The theory upon which the landlord is held to be liable where the premises are leased with a nuisance is that he created the nuisance, and will be presumed to have intended the continuance thereof, or that he acquired title with an existing nuisance and knowingly leased them in that condition. In either case the act of leasing with the nuisance is held to raise the presumption that he intended the nuisance to be continued. Prior to and at the time of the lease, it was the duty of the lessor to put an end to the nuisance. If he fails to do this, and leases the premises with the nuisance on them. he may be deemed, and is deemed, to authorize the continuance of the nuisance, and is therefore liable for the consequences of such continuance. Whether, therefore, the defect is one of original construction, or arises from a failure to repair, or from the maintenance on the premises of any condition endangering the health or safety of strangers, whatever its nature, if it continues a nuisance, the lessor will be responsible for its consequences if he leases the premises with the nuisance upon them, and thus authorizes its continuance."

And this author further states, in article 598:

"It is not always necessary in order that the landlord may be held liable for injuries resulting from a nuisance on the leased premises that the cause of the injury be in and of itself a nuisance at the time of the lease. Leases are made with a view to the use of the premises leased, and if the injury to the person or property of a stranger is the result of the reasonable, ordinary and contemplated manner of use of the premises, the lessor will be responsible therefor, although unused, and as they stood at the time of the demise, the premises were not of themselves a nuisance."

In 16 R. C. L. art. 599, p. 1082, it is stated as follows:

"Where the cause of injury is one created or maintained by the license, consent, concurrence, or participation of the landlord, so that he becomes the principal of, or a joint tortfeasor with, his tenant in doing the wrongful act or in the maintenance of the nuisance, he is, of course, responsible to a third person injured thereby. The liability in such a case results, not from his status as lessor, but is fundamental, and the result of participation in the wrong."

In Bailey v. Kelley, 86 Kan. 911, 122 P. 1027, The Supreme Court of Kansas, quoting from Edwards v. N. Y. & H. R. Co., 98 N. Y. 245, states:

" 'If he (landlord) creates a nuisance upon his premises and then demises them, he remains liable for the consequences of the nuisance as the creator thereof, and his tenant is also liable for the continuance of the same nuisance.' "

The same holding is given in Metzger v. Shultz (Ind. App.) 43 N. E. 887:

"The owner is responsible if he creates the nuisance and maintains it. He is responsible if he creates a nuisance, and then demises the premises with the nuisance thereon, although he is out of possession."

It is the undisputed evidence in this case that the defendant was the owner of the farm where the cattle ate the poison, and that he delivered the poison to the farm and assisted his tenant in applying the poison on the cotton, and that the stalk field was leased to plaintiff with his knowledge and acquiescence. In view of this evidence and the above holdings, the defendant would be liable for

all damage occurring as a result of his negligence.

Defendant complains of that part of the court's instruction No. 4 which reads as follows:

"And now if you shall find by the fair preponderance of the evidence that the defendant had no part in the placing of the barrel of poisoned molasses at an exposed and unsafe place on his premises and that he did not receive any part of the proceeds of the sale of the stalk field, then it will be your duty to find in favor of the defendant on account of the lack of negligence on his part or with which he would be chargeable."

While that portion of the instruction above quoted, taken by itself, would be defective as shifting the burden of proof to the defendant, yet considered in the light of the balance of the instruction and construed in harmony with the entire number of instructions, we are of the opinion no prejudicial burden was placed on the defendant.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of District Judge F. Hiner Dale, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.