## PURE OIL CO. v. GEAR et al.

No. 26009.    Oct. 11, 1938.

490

Alvin Richards and Edwin A. Ellinghausen, for plaintiff in error.

W. F. Speakman, for defendants in error.

HURST, J. This is an action to recover for damage alleged to have been sustained as a result of the poisoning of plaintiffs' cattle by salt water which defendant had permitted to flow from its oil well to a receiving pond or earthen tank. The cause was tried to a jury. Motion of defendant for judgment based on the opening statement of counsel for plaintiffs was denied. Demurrer to the evidence of plaintiffs and a motion for directed verdict at the close of all the evidence were likewise overruled. The jury returned a verdict for plaintiffs, upon which judgment was rendered, and defendant brings this appeal.

The evidence introduced on behalf of plaintiffs discloses the following facts: The defendant had been operating under an oil and gas lease on the 40 acres involved for a number of years. Subsequent to this occupancy by defendant, the plaintiffs entered the premises under an agricultural lease. Defendant had a well located at about the center of the tract which was producing oil and some salt water. Besides two oil storage tanks the defendant maintained a gun-barrel tank in which the salt water was allowed to settle down and thereby separate from the oil. The salt water was then drawn from this tank and allowed to flow through an open ditch about two feet wide to the earthen tank built to retain it located about 75 feet away. In this ditch were three or four depressions, in each of which about a bucket of salt water was allowed to collect. There was no fence or barrier erected around the ditch. During the year 1931, the plaintiffs had cultivated about 15 acres in the field around defendant's oil well, and after the crop had been harvested, plaintiffs turned their cattle into this field. At that time the only salt water in the field was in the puddles in defendant's ditch and in the reservoir, but because of the oil scum on the water in the reservoir, cattle would not drink therefrom, but they could drink the water out of the ditch. Shortly after the cattle were turned into this field they became sick, and plaintiffs called a veterinarian, who examined the cattle and diagnosed their trouble as salt water poisoning. Plaintiffs found cattle tracks around one of the puddles in the ditch. As a result, plaintiffs lost a number of calves and the milch cows were so badly injured that plaintiffs had to replenish the herd in order to carry on their dairy business, and they were also compelled to go to the expense of buying extra feed.

The defendant presents five propositions for reversal, but under the view we take of the case it is only necessary to consider the contention that the trial court erred in overruling defendant's demurrer to plaintiffs' evidence and in overruling defendant's motion for a directed verdict because of the failure to show primary negligence.

The position taken by plaintiffs in their brief is that the act of defendant in permitting the salt water to flow in the open ditch from the gun-barrel tank to the earthen tank is a violation of section 11580, O. S. 1931 (52 Okla. St. Ann. sec. 296), and that therefore such act constitutes negligence per se and eliminates the necessity of proof of any other negligence. Section 11580 provides:

"No inflammable product from any oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock; and all waste oil and refuse from tanks or wells shall be drained into proper

receptacles at a safe distance from the tanks, wells or buildings, and be immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land."

(a) Before determining whether there has been a violation of the statute we must consider the meaning of the provision, "Salt water shall not be allowed to flow over the surface of the land," as it has been judicially interpreted. In stating the intent and purpose of the statute, this court held in Tidal Oil Co. v. Pease (1931) 153 Okla. 137, 5 P.2d 389, that the act was designed to prevent the oil and gas operators from allowing salt water to "escape from their wells and flow over the surface of the land." In two recent decisions we think the proper interpretation of the statute has been very plainly stated, as follows:

"The true rule is that, under the ordinary oil and gas lease, the lessee, in developing the premises in the production of oil and gas, is entitled to possession and use of all that part of the leased premises which is reasonably necessary in producing oil and gas. This extends to space required upon which to erect tanks or dig pits necessary to store or confine such refuse matter as may come from the wells on the leased premises in the course of ordinary prudent operations. But where the lessee makes his selection of the place where such works are to be constructed, and constructs ponds, tanks, or other receptacles in which to confine such refuse matter and runs the same therein and permits the same to escape therefrom and flow over the surface of other parts of the land, he may be required to respond to the owner for damages resulting therefrom—this because of positive statute." Magnolia Petroleum Co. v. Howard (1938) 182 Okla. 101, 77 P.2d 18; to the same effect is Indian Territory Illuminating Oil Co. v. Dunivant (1938) 183 Okla. 233, 80 P.2d 225.

The right in the mineral lessee to the possession of the space required to construct tanks, ponds, or other receptacles necessary to confine refuse matter of necessity includes as an incident thereto the right to additional space required to transport such refuse from the well to such receptacles in an ordinarily prudent manner.

The meaning of the statute is simply this: That after the mineral lessee has constructed his salt water pond with a ditch leading from the well or some other method of transporting the salt water, all done in a reasonably prudent manner, he shall then be guilty of negligence per se if he permits the salt water to escape from the confines of the ditch or pond and flow over the surface of other parts of the land. The purpose of the statute is to prevent the oil operators from allowing salt water and other deleterious substances to spread indiscriminately over the surface of the land. It contemplates an "escape" from that part of the premises which the operator has the right to use. In each of the cases relied on by plaintiffs and to which our attention has been called, where a violation of the statute has been declared, the salt water had broken the bounds of its confinement by some means or another and "escaped" and flowed over the surface of the land in the plain and ordinary meaning of the term. Marland Oil Co. v. Hubbard (1934) 168 Okla. 518, 34 P.2d 278; Texas Co. v. Mosshamer (1935) 175 Okla. 202, 51 P.2d 757; Pure Oil Co. v. Chisholm (1936) 181 Okla. 618, 75 P.2d 464; Phillips Petroleum Co. v. Bartmess (1937) 181 Okla. 501, 76 P.2d 352; Magnolia Petroleum Co. v. Howard, supra; Indian Territory Illuminating Oil Co. v. Dunivant, supra.

(b) Considerable confusion has arisen among the parties as to which one has the burden of proof on the question of how much of the premises is necessary for the disposal of the waste matter. Defendant refers to Marland Oil Co. v. Hubbard, supra, and plaintiffs point out that Pure Oil Co. v. Chisholm expressly overruled the former case in so far as it pertained to the burden of proof. The complexity of this question is eliminated by examining the true holding of the court in Pure Oil Co. v. Chisholm. There plaintiff proved a state of facts wherein it appeared that "defendant permitted salt water to escape and flow * * * over and across the lands belonging to plaintiff." Upon such showing it was held that the burden of proof shifted to defendant to show that the resulting damage was a necessary incident to the prudent operation of the lease. This rule was reiterated in Magnolia Petroleum Co. v. Howard, supra, and Indian Territory Illuminating Oil Co. v. Dunivant, supra. It is important to notice that the burden of proving a violation of the statute as above defined was first sustained by plaintiff in the Chisholm Case and the others cited. It is only after such a showing by plaintiff that the burden of proof shifts to the oil operator and he is required to come forward with his evidence. In this case the decisive question is whether plaintiffs' evidence has disclosed facts which constitute

a violation of the statute, and until such facts have been established there can be no question about the burden of proof. In Indian Territory Illuminating Oil Co. v. Henning (1937) 179 Okla. 462, 66 P.2d 83, it is said: "The violation of the statute is not to be lightly presumed, but must be proved by competent and substantial evidence." And of course it means that it must be proved by the plaintiff.

(c) In determining whether there has been a violation of the statute, or to put it another way, in determining whether the defendant is guilty of primary negligence, in any case, there may always be a question of whether such determination is within the province of the court or the jury. The rule is well established. It is that when a given state of facts is such that reasonable men may fairly differ upon the question of whether or not there was negligence, the question must be submitted to the jury. But on the other hand, where the facts are such that reasonable men must draw the same conclusion from them, the question is one of law for the court. See Chicago, R. I. & P. R. Co. v. Felder (1916) 56 Okla. 220, 155 P. 529, and cases therein cited. Here the test for determining whether there has been negligence per se is: Has plaintiff presented a set of facts where salt water has escaped from that part of the premises that defendant has the right to use for its transportation and confinement and flowed over other parts of the land? We think it cannot be doubted that reasonable men must draw the conclusion that no such set of facts has been established. The salt water was at all times confined within the ditch constructed for the purpose of transporting it to the pond. It never got out of control. It did not escape.

It was not contended in the trial court, nor is it contended here, that the ditch is either too wide or too long, so we do not deem it necessary to consider that question here. We conclude, therefore, in so far as negligence is sought to be predicated on the violation of the statute, that the trial court erred in submitting the case to the jury.

■ However, aside from the statute, plaintiffs in their petition alleged that defendant was guilty of ordinary negligence. The negligence complained of in the petition is that defendant negligently and carelessly drew off salt water from the gunbarrel tank "and permitted the same to flow into a pond where the cattle and stock of the plaintiffs could and would drink the same." The court instructed the jury on ordinary negligence. However, in the original brief filed on behalf of plaintiffs they relied solely on the violation of the statute and did not discuss the question of ordinary negligence. But in plaintiffs' response to the petition for rehearing filed in this cause, plaintiffs assert without citation of authority that the defendant was guilty of ordinary negligence in three particulars: (a) The failure of defendant to erect a fence around the ditch; (b) the failure of defendant to drain the salt water through a pipe rather than allowing it to flow in an open ditch; and (c) the failure to keep the ditch clean so that the puddles of salt water would not form therein.

We must first determine the duty that the defendant owed with respect to plaintiffs' cattle. Inasmuch as we have held that the defendant, as mineral lessee, has the exclusive right to the use of the space required for the construction of the ditch and pond, under the circumstances in this case, it follows that the cattle in drinking from this ditch were trespassers. Such being the case, the duty owed, under the general rule, would be merely not to intentionally, willfully or wantonly injure the animals, or after the discovery of their peril, to use reasonable care. 1 R. C. L. 1132, sec. 74; St. Louis & S. F. R. Co. v. Brown (1912) 32 Okla. 483, 122 P. 136.

It is asserted by plaintiffs that the herd law is in effect in Creek county, and that the cattle had a lawful right to be in the enclosed tract surrounding the well. We think the herd law has no application to this case. It requires, broadly speaking, the owner of domestic animals to restrain his stock on his own premises by fences so as to prevent them from running at large. It is held, in counties where the herd law is in effect, that cattle running at large are trespassers. Bottoms v. Clark (1913) 38 Okla. 243, 132 P. 903. It is further held in that case that in counties where the herd law is not in force, the landowner cannot recover for damages caused by trespassing cattle unless he has fenced against them. Therefore, plaintiff apparently contends that in the instant case, since it is undisputed that the cattle were not running at large at the time of the injury and since the herd law has not been violated, they were not trespassers. But it does not follow that because the animals are not roaming at large in violation of the herd law, or because there is no herd law in

force, their entry upon defendant's land would be lawful. In 1 R. C. L. 1133 it is said:

"And it seems that it is, generally speaking, immaterial whether the common-law rule as to keeping animals from straying is in force or not, since where the rule permitting animals to roam is in operation, it has no greater effect than to exempt the owner from liability for their trespasses, and does not ordinarily make their entry on unfenced lands lawful, so as to render the landowner liable for injury to them not wantonly or intentionally inflicted, and arising from dangerous places or substances existing on his land."

Thus it appears that the herd law has no effect upon defendant's duty in this case.

It is suggested by plaintiffs that defendant is guilty of primary negligence because it did not construct a fence around the ditch or enclose the salt water within a pipe while transmitting it to the pond so as to keep it from being accessible to the cattle. But there is no duty upon defendant to erect a protecting fence or enclose salt water within a pipe unless it would be upon the theory that salt water is a poisonous compound within the meaning of section 2440, O. S. 1931 (21 Okla. St. Ann. sec. 1197) as construed by Midland Valley R. Co. v. Rippe (1916) 61 Okla. 314, 161 P. 233, and Moores v. Rumsey (1934) 169 Okla. 103, 36 P.2d 15. Section 2440, O. S. 1931, provides:

"Whoever shall, except in a safe place on his own premises, lay out strychnine or other poison, is guilty of a misdemeanor."

This statute was construed in Midland Valley R. Co. v. Rippe, supra, so as to impose liability upon a railroad company which allowed arsenic to stand upon its own land in such condition as to be accessible to trespassing cattle. It was held that although there was not a statutory duty upon the railroad company to fence at that particular point, nevertheless, that did not relieve it from the duty of properly safeguarding the poisonous compound by fencing or otherwise, even as against trespassing animals. Likewise, in Moores v. Rumsey, supra, the landowner was held liable, by reason of the statute, for injury to cattle caused by eating arsenic which he had permitted to be placed upon the premises. It appears in that case, however, that the landowner had knowledge that the premises had been leased as a pasture for the cattle. Also, in Missouri, K. & T. Ry. Co. v. Rose (1916) 61 Okla. 156, 160 P. 734,

the railway company was held liable for the death of plaintiff's cow caused by drinking water poisoned by arsenic left standing on the railroad right of way, although at the place of injury the law did not require the right of way to be fenced. But the rule announced in these cases is not applicable to salt water and other deleterious substances incident to the operation of an oil and gas lease. We say this for three reasons:

(a) This court, in Peters Petroleum Corporation v. Alred (1932) 156 Okla. 249, 10 P.2d 705, held that there is no statute in this state which requires an oil company to maintain a fence around its premises, where it is operating for oil, so as to prevent domestic animals from having access to salt water or other deleterious substances produced from the well. The facts in that case are analogous to those presented here. There the oil operator was the owner of both the oil and gas rights and the surface rights on a certain tract of land enclosed by fence, adjoining plaintiff's premises. When defendant tore down part of its fence, plaintiff's cattle came upon its premises and drank from pools of salt water which had been permitted to stand thereon. There was no claim that oil or salt water had been permitted to flow on land of plaintiff, but the sole contention was that defendant was negligent in failing to maintain the fence around the premises. Thus in both the Alred Case and the case at bar the salt water was at all times confined upon land over which defendant had the exclusive right of possession. If salt water and other deleterious substances produced from oil wells are considered in the same category as "strychnine or other poison" referred to in section 2440, supra, then by the construction of the cases just cited that section would require the premises to be fenced or protected by some other means to prevent cattle from having access to it. Therefore, Peters Petroleum Corporation v. Alred, supra, may be said to be authority for the proposition that salt water produced from an oil well is not a poisonous compound within the meaning of the authorities referred to. Also, it was there pointed out that the case of Missouri, K. & T. Ry. Co., v. Rose, supra, was based upon "the doctrine of negligence after discovered peril," and the case was thereby distinguished.

(b) Also, under the rule of ejusdem generis, salt water and other deleterious substances coming from the production of oil and gas wells cannot be considered as

"other poison" similar to strychnine, and, by reason of this canon of construction, section 2440, supra, cannot be made applicable here.

(c) A further consideration impelling this conclusion is the fact that the Legislature, by section 11580, O. S. 1931 (52 Okla. St. Ann. sec. 296), has specifically dealt with salt water and deleterious substances coming from the operation of oil and gas properties, evidently not intending that such substances be included in section 2440.

(d) The cases announcing the rule as to poisonous compounds are distinguishable from the instant case. In each of these cases the poisonous compound involved was arsenic, which is clearly analogous to strychnine. In addition to that, in the case of Missouri, K. & T. Ry. Co. v. Rose, supra, and Moores v. Rumsey, supra, the landowner knew or had reason to believe that the cattle would be present upon the premises where the poisonous substance was kept.

In the case at bar there is no evidence from which it could be said that defendant knew or should have known that plaintiffs' cattle would be near the ditch in question. The evidence discloses that the well was located on a 15-acre tract enclosed by a fence, and that this tract had been cultivated as a cornfield, and there is no evidence that cattle had been within this tract prior to January 2, 1932, when plaintiffs commenced using it as a pasture. Also, there is no contention that the evidence is sufficient to support the doctrine of negligence after discovered peril. Under these circumstances, the defendant was under no duty to either construct a fence around the ditch or to transmit the water through a pipe line, and the failure to do either one of these acts did not constitute negligence.

Since the cattle were trespassing, the act of the defendant in allowing puddles of salt water to collect within the ditch does not constitute actionable negligence, inasmuch as there is no evidence tending to show that such act was intentional, willful, or wanton.

We conclude, therefore, that the evidence is such that reasonable men could draw only one conclusion, that is, that plaintiffs have failed entirely to show primary negligence, and the court should have sustained defendant's demurrer to the evidence and instructed a verdict in its favor.

Judgment reversed, with directions to enter judgment in favor of defendant.

OSBORN, C. J., BAYLESS, V. C. J., and CORN, GIBSON, and DAVISON, JJ., concur. WELCH and PHELPS, JJ., absent. RILEY, J., dissents.