## PINE v. ROBSON.

No. 28656.    June 25, 1940.

Rehearing Denied Sept. 10, 1940.

Application for Leave to File Second Petition for Rehearing Denied Oct. 1, 1940.

*105 P. 2d 530.*

Chas. B. McCrory, of Okmulgee, for plaintiff in error.

G. L. Bynum and W. E. Foster, both of Henryetta, for defendant in error.

OSBORN, J. This action was instituted in the superior court of Okmulgee county by Omar Robson, hereinafter referred to as plaintiff, against W. B. Pine, hereinafter referred to as defendant, wherein it was sought to recover damages sustained to plaintiff's cattle and to his land by virtue of an alleged violation of section 11580, O. S. 1931, 52 Okla. St. Ann. § 296. It is claimed that defendant, as operator of a producing oil well, permitted the escape of salt water and oil refuse from said operation and allowed the same to flow over the surface of the land. Plaintiff was the owner of the surface rights. Damages for depreciation in the value of the land caused by the pollution and damages to plaintiff's cattle were claimed. The cause was tried to a jury and a verdict was returned in favor of plaintiff in the sum of $1,465. From a judgment thereon the defendant has appealed.

The oil and gas lease involved herein was executed to defendant Pine on March 8, 1912. In that year the well herein involved was drilled. The record shows that defendant and other persons operated the property until August 27, 1932, at which time defendant Pine acquired the outstanding interests and became sole owner thereof. On October 25, 1935, defendant assigned the lease to one Louis Stekoll and since that time has owned no interest therein. Plaintiff seeks no damages from Stekoll. The jury was instructed that plaintiff could not recover for damages sustained subsequent to October 25, 1935.

Plaintiff acquired the surface rights by purchase on January 26, 1925. During the period in which the damages herein involved accrued, the well was producing approximately one barrel of oil a day and a like amount of salt water. The well was located in the northeast corner of the quarter section. A natural ravine of approximately 80 feet in width extended from the slush pit of the well to an earthen pond located approximately 1,400 feet northwest from the well near the northern boundary line of the quarter section. This was originally a fresh-water pond used by defendant for development purposes.

Plaintiff testified that when he purchased the property the water in said pond was fresh. Plaintiff's evidence was to the effect that the salt water and oil had escaped from the slush pit in the vicinity of the producing well and was carried through the ravine in a northwesterly direction and emptied into the pond hereinabove referred to. It appears that the property was divided by a wire fence. The north 80 acres was used principally for agricultural purposes, but after the crops were gathered plaintiff sometimes allowed his stock to graze thereon. It was plaintiff's evidence that at different times during the year 1935, the cattle, through open gates or by breaking down the fence, entered upon the north 80 acres and drank the polluted water, and as a result eleven head of steers died and 90 head were depreciated in value. Plaintiff likewise contended that the flow of salt water from the operations through the ravine had injured and damaged the land.

At the outset it may be said that there is ample evidence to the effect that the water in the pond was polluted by salt water, and that plaintiff's cattle were injured and damaged by drinking the same.

Defendant contends, first, that the evidence failed to show a violation of section 11580, supra, and in this connection relies upon Pure Oil Co. v. Gear, 183 Okla. 489, 83 P. 2d 389. In that case it was held that permitting salt water to flow through an open ditch two feet wide for a distance of 75 feet from the well to a receiving pond did not constitute a violation of that portion of section 11580, supra, providing that salt water shall not flow over the surface of the land. It was there shown that the salt water did not escape from the receiving pond. This rule is predicated upon the principle that the oil and gas lessee is entitled to the possession and use of all that part of the leased premises reasonably necessary in producing and saving the oil and gas, including the space to construct tanks and ponds

in which to confine salt water and other waste matter coming from the wells, and also including the surface necessary to transport such waste matter from the wells to such tanks and ponds in a reasonably prudent manner. As we have heretofore pointed out, the natural ditch through which the salt water was permitted to flow in the instant case is approximately 80 feet wide and one-fourth mile long. It is clear that the rule announced in Pure Oil Co. v. Gear, supra, is not applicable.

In the case of Texas Co. v. Mosshamer, 175 Okla. 202, 51 P. 2d 757, we pointed out that as between the owner of the surface rights and the oil and gas lessee there is a concurrent possession and a right to use the land for different purposes; that the statute herein involved seeks to give effect to the rights of both parties; that the provision that salt water shall in no event be allowed to flow over the surface of the land is for the protection of the rights of the surface owner; that where such statute is violated, negligence as a matter of law is implied, in the absence of a showing of willful acts on the part of the plaintiff causing the damage. As heretofore stated, the escape of salt water over the surface of the land and resulting damage to plaintiff are established by competent evidence.

Considerable argument is devoted to alleged errors of the court in instructing the jury. In this connection it is urged that certain elements of damage were submitted to the jury upon which the proof submitted was wholly insufficient. An examination of the instructions discloses that the court submitted three separate elements of damage, that is, damages for injuries to the livestock, permanent damage or injury to the land, and damages for loss of pasturage. No specific evidence was introduced with regard to the amount of damage sustained for loss of pasturage, but there was specific evidence of the other elements of damage to which we have referred. There is no contention that the verdict of the jury was excessive under the evidence which was adduced; therefore, the submission of the element of damage relating to the loss of pasturage could not be otherwise than harmless error.

It is further urged that by instruction No. 14 defendant Pine was deprived of the statute of limitations applicable to his defense. In this connection the jury was instructed that any damage sustained more than two years prior to December 31, 1936, the date of the institution of the action, would be barred by the statute of limitations. The record discloses that the action was instituted on the above-named date by the filing of a petition naming one Louis Stekoll as sole defendant. On March 29, 1937, defendant Pine was made a party defendant and was served with summons on March 31, 1937. Prior to the date of the trial the cause was dismissed as to defendant Stekoll. Defendant Pine contends that insofar as he is concerned the two-year period of limitation should be dated from March 29, 1937. In this connection we have carefully examined the record and fail to find any proof of damage sustained by plaintiff from the period of December 31, 1934, to March 29, 1935. It therefore appears that the rights of defendant Pine were not prejudiced by the giving of said instruction.

Other contentions have been examined and are without substantial merit.

The judgment is affirmed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, HURST, and DANNER, JJ., concur. CORN, GIBSON, and DAVISON, JJ., absent.