BERBOHN v. PINKERTON et al.

No. 35228.   Jan. 10, 1953.

Rehearing Denied March 31, 1953.

*255 P. 2d 260.*

Ted R. Fisher, Watonga, for plaintiff in error.

Draper Grigsby, Oklahoma City, for defendants in error.

O'NEAL, J.   The amended petition substantially alleges that Lena Mae Porter, on February 6, 1941, was riding as a guest in an automobile driven by her husband, which automobile was traveling in an easterly direction on U. S. Highway 270, at a point approximately one-half mile west of the city of Watonga, Oklahoma, when the accident occurred resulting in her death.

The defendant Carl Pinkerton was the owner of a truck, with trailer attached, which truck was being operated at the time by the defendant Theodore Gannon.   The said truck made a U-turn on said highway, the front end of the truck extending in a southeasterly direction upon the south edge of the paved highway and the rear end of the truck, or trailer, extending in a northwesterly direction near the north edge of the paved highway; that the truck with trailer body extended a distance of 44 feet, completely blocking the highway from travel by other vehicles; that the automobile in which Lena Mae Porter was riding ran into the west side of the body of said trailer and from the resulting collision, Mrs. Porter received injuries resulting in her immediate death.

The petition specifically alleges that the said defendant Theodore Gannon knew, or should have known, that the paving slab on said highway at said point was only 21 feet wide, and that each of the shoulders of said highway on each side of said paving slab were only 11 feet wide, and in making a left turn, or in making a U-turn, with said truck at said time and place, such truck would completely block said highway to all other vehicles traveling upon the highway, for the period of time necessary to move said truck into the regular traffic lanes on the paving of said highway.

Each of the defendants filed answers denying generally all of the allegations of plaintiff's petition, and further pleaded that plaintiff's deceased was guilty of contributory negligence and by reason thereof should not recover herein.

At the close of plaintiff's case, defendants interposed a demurrer to plaintiff's evidence upon the ground that plaintiff's evidence did not make out a case to establish prima facie negligence. The trial court sustained the demurrer and entered judgment for defendants. From the order and judgment rendered, plaintiff appeals.

The sole question here presented is whether the facts established in the

trial of the cause prove primary negligence on the part of the driver of the truck. The evidence shows that Theodore Gannon, the driver of the truck, parked the truck in front of the Grove residence a short time before the accident here involved. Desiring to return to Watonga, one-half mile east of the Grove residence, he drove his truck on the paved highway and made a U-turn to the left. The front of the truck at the time of the accident was facing in a southeasterly direction, the motor extending upon the shoulder on the south side of the paved highway, and the rear end of the body trailer extended to the northwest near the north edge of the blacktop of the highway. In this position, the entire highway was blocked from traffic. The automobile occupied by Mrs. Porter and operated by her husband, ran into the truck approximately nine feet from the rear end thereof. The impact pushed the truck some twelve feet sideways in an easterly direction.

Defendants assert that the driver of the truck had a lawful right to operate the truck upon the highway, and that turning across the highway violated no statutory provision or rule of the road. The statement is an over simplification of the duty required under the circumstances of the case. Under the undisputed facts there were two spaces off of the highway; on immediately north of the blacktop and the Grove house, and one east of the Grove house, where the 44-foot length vehicle could have made a U-turn. Gannon, however, chose the other method. The case cannot be resolved by admitting his right to the use of the highway, but must be decided on whether the use was a reasonable one under the circumstances disclosed.

The physical condition of the paved highway, its abutment, and the condition of the land lying between the north edge of the highway and the Grove residence where the defendant's truck had been parked prior to making the U-turn, is disclosed by the evidence of Rev. Tom E. Carter, who visited the scene of the accident the morning of February 7, 1941. He testified that there was a clear tract of land from the north edge of the paved highway, a distance of 70 feet to a fence near the Grove residence. The record discloses the following interrogatives and answers:

"Q. Now, Tom, another question—You observed the condition there on that ground with reference to the tracks running in there, and the area there immediately north of the blacktop, and right at the Grove house? A. Yes, sir.

"Q. I'll ask you if that distance of 70 feet in there is wide enough for a truck to have made a complete U-turn back to the highway? A. Yes, it is, because it has been used that way since I have been out there. The cars have been coming up in there and heading back to the highway after a U-turn is made.

"Q. When you first went out there to the scene of this wreck on the morning of February 7th, 1941, was there any such drive leading over to that fence where they make their turns? A. No, the drive then went on the shoulder, and this one goes clear up to the fence.

"Q. But there has been no change in the lay-out of the land itself since this accident happened? A. No, sir. As far as I can see there hasn't."

The witness, Arthur Berbohn, administrator of the estate of the deceased, visited the scene of the accident on the morning of February 7, 1941, and he testified that there was a clear tract of land extending from the north edge of the blacktop, a distance of 70 feet, to the Grove residence, and that there were no obstructions which might interfere with cars turning on the tract of land north of the highway. He also testified that there was a level tract of land right east of the Grove residence of approximately 90 feet in width.

Merrill Baskins, a deputy sheriff, testified that he arrived at the scene of the accident shortly after the collision of the car and the truck, and that the

driver of the truck, Theodore Gannon, told him that he had parked the truck facing west in front of the Grove house and had been visiting Mr. Hicks, his father-in-law, at the Grove residence; that he decided to return to Watonga and had driven the truck upon the paved highway and had made a U-turn toward the east when the collision occurred. Baskins stated that the front end of his truck rested upon the dirt shoulder south of the blacktop, and the rear end of the trailer rested on the north edge of the blacktop at the time of the accident; that his truck and trailer was 44 feet long and that in its then position had blocked the entire highway.

In our view of the case the facts pleaded and established upon the trial prove a prima facie case of negligence to be submitted to the jury, and that the court erred in sustaining the demurrer of the defendants to plaintiff's evidence.

A demurrer to the evidence admits every fact which the evidence, in the slightest degree, tends to prove, and all inferences and conclusions which can be reasonably and logically drawn therefrom; and if there is a conflict in the evidence, that which is unfavorable to the party against whom the demurrer is directed is to be considered withdrawn. Pure Oil Co. v. Gear, 183 Okla. 489, 83 P. 2d 389; Wallace v. First National Bank, 167 Okla. 563, 31 P. 2d 135; Brown v. Wrightsman, 175 Okla. 189, 51 P. 2d 761.

In Caesar v. Phillips Pet. Co., 187 Okla. 559, 104 P. 2d 429, we said:

"The driver of a vehicle desiring to make a left turn across the highway between intersections should exercise extra precaution before attempting it, as such turns are less frequent than at intersections, and therefore not anticipated to the same extent by other travelers."

In Union Transportation Co. v. Lamb, 190 Okla. 327, 123 P. 2d 660, we said:

"A determination of the requirements of due care as the same should be exercised by an ordinarily prudent person rests in the first instance with the jury, and it is only where reasonable men would not differ or where the law definitely prescribes the standard of duty that the court may properly interfere with or ignore the determination of that fact-finding group."

We conclude that the jury in the instant case should decide the question of fact whether the defendant Gannon, having the means of choice, in the operation of the truck, in the circumstances here disclosed, exercised that degree of care which a prudent person should have exercised under the existing circumstances.

We think the evidence is such as reasonable men might differ on the question of negligence or nonnegligence, and therefore the demurrer to plaintiff's evidence was erroneously sustained.

The case is reversed for a new trial.

ARNOLD, C.J., and WELCH, CORN, DAVISON, and BINGAMAN, JJ., concur. HALLEY, V.C.J., and GIBSON, and JOHNSON, JJ., dissent.

WELCH, J. (concurring specially). I concur because I think the decision in Carter, Adm'r, v. Pinkerton, 194 Okla. 34, 146 P. 2d 842, is controlling and is binding on the court in this case. See, also, Pinkerton v. Carter, 197 Okla. 95, 169 P. 2d 192.