**Helen HOYLE, Appellant,**

v.

**GLENN E. BREEDING CO., a sole proprietorship, et al., Appellees.**

**No. 49406.**

Supreme Court of Oklahoma.

Oct. 12, 1976.

As Corrected Nov. 15, 1976.

Rehearing Denied Nov. 16, 1976.

John H. Kennedy, Oklahoma City, for appellant.

Fenton, Fenton, Smith, Reneau & Moon by Dale Reneau, Oklahoma City, for appellees.

DAVISON, Justice.

Appellant sought damages for personal injuries sustained when she was stricken by a horse which was running at large. Defendants were Luther Crable (owner of the horse), Elbert C. Judge (lessee of the pasture from which the horse strayed), and Glenn E. Breeding Company, a sole proprietorship, Irene Breeding Sharp, individually and as executrix of Glenn E. Breeding's estate, and Richard H. Godfrey (co-owners and lessors of the pasture). The trial court granted summary judgment in favor of Glenn E. Breeding, a sole proprietorship, Irene Breeding Sharp, individually, and as executrix of the estate of Glenn E. Breeding, and Richard H. Godfrey. Appellant appeals from the trial court's order granting the summary judgment.

For the sake of convenience, the parties will be referred to by name or by their designation at the trial court level.

Defendant Glenn E. Breeding Company, a sole proprietorship, owned a fourteen acre tract of pasture land in Del City, Oklahoma, adjacent to the housing development in which plaintiff resided.

In February, 1969, the Breeding Company leased the tract of pasture land to defendant, Judge. The lease provided in part:

"TENANT intends to use the leased premises for the purpose of raising horses and agrees to do the following things in connection therewith:

(a) To keep no more than ten (10) horses or cows on the premises at any time, and

(b) To keep the premises free of waste material from the horses and not

to permit an unpleasant odor to the nearby housing development, and

(c) To keep any horses fenced in and away from the housing development a reasonable distance."

The trial court's record, in answers to interrogatories, and in depositions, shows that at the time the premises were leased to defendant Judge, that no fences existed in the pasture land, except fencing constructed as part of the housing development adjacent to the pasture land.

The record also shows that defendant Judge constructed all the fences in the vicinity except those connected with the housing development.

Defendant Crable payed defendant Judge $10.00 per month in return for which defendant, Crable's horse was pastured in the fourteen acre tract. In December, 1972, defendant Godfrey acquired one-half interest in the ownership of the fourteen acre tract.

Plaintiff alleged that the landlords were negligent in: (1) leasing the premises without erecting an adequate fence (2) were negligent in leasing the premises which they knew or should have known would be a nuisance because of the defective and dangerous condition created by the absence of a fence in light of the proposed use of said land (3) that the landlords were negligent in failing to use their premises in a manner which reasonably respected the rights of adjacent property owners and (4) were negligent in failing to require the tenant or subtenant to build, maintain and repair an adequate fence to restrain the horses in violation of 4 O.S. 1971 § 98 and Del City Ordinances, which require that all domestic animals should be restrained by the owner at all times from running at large. Plaintiff further alleged that the landlords were negligent in failing to control the tenant and subtenant Crable's activities and use of the land and were negligent in failing to terminate the dangerous condition and nuisance.

Professor Thompson at § 1243 of his treatise on real property states the general rule regarding lessor's liability to third parties:

"A major exception to the rule of non-liability of the lessor to third parties for injuries suffered by them due to the defective condition of the leased premises is the case of nuisance. This exception is, broadly stated that if a nuisance existed on the premises at the time of letting, or if at that time conditions existed from which a nuisance would develop and the existence of such conditions were known to the lessor the lessor is liable to third parties, who suffer injury or damage thereby even though the lessee has legal possession of the premises at the time of the occurrence. If the nuisance arises subsequent to the time of letting then the possessor of the leased premises alone is liable. One who erects a nuisance on his property cannot avoid liability therefor by leasing the same, and his liability extends to the continuance of the nuisance after the lease becomes effective. . . . A lessor is responsible for injuries to third parties stemming from his own negligence but not for those resulting from the fault of the tenant. . . ." [Footnotes omitted].

*Moores v. Rumsey*, 169 Okl. 103, 36 P.2d 15 (1934), is a case in which, after the landlord had leased the premises, both landlord and tenant left a barrel of poison in a field in which cattle were subsequently pastured. Death and injury subsequently resulted from the cattle having ingested the poison left on the premises.

In holding the landlord liable, we stated in our syllabus:

"The mere fact of a tenant's occupancy of premises when an accident happens to a third person will not relieve the landlord from the consequences of his own negligence.

*Where a landlord is liable for defective construction or condition at and be-*

*fore a tenancy, the liability continues throughout the tenancy."* (Emphasis added).

Similarly in *Spellman v. Sherry,* 181 Okl. 174, 72 P.2d 793 (1937), in discussing the rights and liabilities of landlords owning adjoining buildings with a common stairway and second story hallway between, when the defendant landlord leased space in his building to a plumber, an electrician and a lodge of the Veterans of Foreign Wars, this Court stated:

"Certainly we cannot say that a lodge of the Veterans of Foreign Wars is ordinarily expected to become a nuisance. Nor is a plumbing or electric shop ordinarily a nuisance. Unless so, the landlord is not liable for the acts of the tenants.

'The rule of law on the subject, as laid down both by the English courts and those of the United States, is that *to bring liability home to the owner of real property, the nuisance must be one which is in its very essence and nature a nuisance at the time of the letting, and not something which is capable of being thereafter rendered a nuisance by the tenants,* or, as it has been said, it must be a normal one.' 16 R.C. . . par. 593, p. 1074." 72 P.2d 793 at p. 795. (Emphasis added).

In *Poley v. Browne,* 199 Okl. 416, 186 P.2d 812 (1947), this Court considered a situation analogous to the case now before us.

In that case, the plaintiff alleged (1) that the defendant owned a lot in Tulsa which it leased to other defendants (2) that with the knowledge and consent of the lessor defendant, the lessee directed and maintained on the lot an electric panel board (3) that the panel board which was not fenced in, was negligently constructed and insecurely fastened to the ground (4) that there were a number of gadgets and levers on it which were accessible and attractive to children (5) that many children in the area had played upon the sign and (6) that all of the foregoing facts were known to the landlord.

In deciding the issues presented in the *Poley* case, we stated:

"The plaintiff contends that his petition shows that an attractive nuisance was installed on the premises with the full knowledge and consent of the owners, the named defendants, and, therefore, these defendants are liable for damages for injury to children occurring by reason thereof. *In support of his contention he cites [cites omitted].* It will be noted that in those cases there was either direct participation in the construction or maintenance of the instrument or structure which produced the injury or the owners let the property with knowledge that it would be used in such a manner as to constitute a nuisance or there was a duty to maintain the premises or the premises were let in a negligent state of repair. Not so here.

\* \* \* \* \* \*

To hold these defendants liable under the allegations of plaintiff would be to say that a property owner who leases to another without negligence and without duty to repair or maintain the premises thereafter becomes liable for the negligent construction or maintenance of structures placed and maintained thereon by the lessee merely because he knew of the existence thereof and the allurement of children. *If the use of premises by the tenant may or may not become a nuisance according as the tenant exercises ordinary care, or uses the premises negligently, the tenant alone is liable.* [Cites omitted].

The plaintiff did not state a cause of action against the named defendants and their demurrer was, therefore, correctly sustained. (Emphasis added).

█ In her brief, plaintiff agrees that the law in *Spellman,* supra, and *Poley,* supra, is correctly stated, but asserts that the nuisance in the case at bar was one which already existed at the time the lease was

executed, because it had arisen by the act of leasing the property and is therefore distinguishable from the *Spellman* and *Poley* cases, supra, because those cases did not deal with an incipient nuisance.

In support of her proposition, plaintiff cites *Bowen v. Holloway,* Fla.App., 255 So.2d 696 (1971). In *Bowen,* the defendant landlord leased the pasture and stall area to the defendant lessee. The pasture lacked a fence on the street side and on several occasions before the accident, horses pastured on the property had been found running at large. The plaintiff, motorcyclist, sustained personal injuries in an accident in which the plaintiff collided with a horse who had escaped from defendant's property and was running at large. In reversing the summary judgment in favor of the defendant landlord, the Supreme Court of Florida held:

"A lessor landlord may be liable to third persons for injuries caused by defects in the leased premises during the term of the lease when the defect in or condition of the premises at the time of the lease was in the nature of either an existing or incipient nuisance."

The Court went on to say:

"Appellant contends that the defect or dangerous condition constituting the incipient nuisance was the absence of a fence on the street side of the stall area, a condition which existed at the time the property was rented to the Eckerts. [owners of the horse]. A factual issue is presented as to whether this is a defect in or a condition of the leased premises of such a nature that by the tenant's use of the property for the purposes and in the manner intended by the lease, such use will result in a nuisance. Of course, even if a nuisance is found to exist, a corollary issue is whether such nuisance proximately caused injuries to appellant."

Plaintiff in the case now before the Court, contends a fact question similar to the question which existed in the *Bowen*

case, exists in the case at hand. We do not agree.

The case now before the Court is clearly distinguishable from *Bowen,* for in *Bowen* there is no indication that a lease existed providing that there was a duty on the part of the lessee to fence the area in question. However, in the case at bar, the tenant in leasing the premises agreed to keep any horses on the tract of land fenced in at a reasonable distance away from the housing development adjacent to it.

▮▮   The letting of a tract of land adjacent to a housing development, although the tract is not fenced in, is not a nuisance in and of itself, where the lessee agrees to keep any horses kept on the tract fenced in.

A nuisance, if one existed, was caused by the tenant who constructed, what a jury might find to be, a fence inadequate for the purpose of keeping horses enclosed.

There was no evidence before the trial court to counter the evidence introduced by defendants which showed that all fences used to keep the horses enclosed were constructed by the tenant after the lease period had begun. This being the case, there just is no genuine fact question as to any of the fencing alleged to be insufficient, being present at the time the property was leased.

Nor, does there exist a genuine fact question as to whether an incipient nuisance existed. In *Silica Products Co. v. Haydite Co.,* 7 Cir., 42 F.2d 861, 865 (1929), the court stated that: "'Incipient' is defined as, 'Beginning to or be or show itself; commencing; initial.'" The Random House Dictionary of the English Language defines incipient as: "Beginning to exist or appear; in an initial stage."

Although there was no fence upon the tract when the landlord leased it, we hold that no incipient nuisance existed at the time that tract was leased, for under the lease agreement, the tenant agreed to fence in any horses kept on the tract and keep them away from the housing development.

We find no evidence to suggest that at the time the premises were leased that a nuisance was becoming apparent or was in an initial stage—the uncontroverted evidence shows that a nuisance, if one existed, had its inception after the premises were leased, when a tenant constructed the fences used to enclose the horses.

There being no genuine fact question as to the existence of an incipient nuisance at the time the tract of land was leased by defendant landlord, we hold that the trial court acted properly in granting a summary judgment in favor of the lessors, Glenn E. Breeding Co., a sole proprietorship, Irene Breeding Sharp, individually and as trustee of Glenn E. Breeding, and Richard H. Godfrey.

Affirmed as to co-owners, lessors.

WILLIAMS, C. J., HODGES, V. C. J., and IRWIN, BERRY, LAVENDER, BARNES, and SIMMS, JJ., concur.

DOOLIN, J., dissents.